Vincent F. **RATCLIFF**, Appellant,

v.

**NATIONAL COUNTY MUTUAL FIRE INSURANCE COMPANY, Appellee.**

No. 05–86–00815–CV.

Court of Appeals of Texas, Dallas.

Sept. 25, 1987.

**956**

Les F. Weisbrod, Dallas, for appellant.

Arlen D. Bynum, Dallas, for appellee.

Before STEPHENS, HECHT and THOMAS, JJ.

HECHT, Justice.

Vincent F. Ratcliff sued National County Mutual Fire Insurance Company for the damages awarded him by default judgment against National's insured in a prior action of which National had no notice. Ratcliff and National both moved for summary judgment. The district court granted National's motion and denied Ratcliff's.

We hold that policy defenses to claims against insurers for payment of damages adjudged against insureds have not been abolished by amendments to the Texas Motor Vehicle Safety Responsibility Act ("the Act") [1]. We further hold that an insurer who receives no notice of suit against its insured, either from the insured or from the plaintiff who knows the insurer's identity, is prejudiced by the rendition of a default judgment against its insured and may assert breach of the lack of notice condition of the policy as a defense to a suit on the judgment by the plaintiff against the insurer. Accordingly, we affirm the judgment of the district court.

I

The material facts are not disputed. Ratcliff was involved in a motor vehicle accident with Terry W. Rice, who was insured under an automobile liability policy issued by National. After the accident Ratcliff enlisted the services of legal counsel, who contacted National's representative about Ratcliff's claim. While discussions between Ratcliff's attorneys and National's claims representative were ongoing, Ratcliff sued Rice without notifying National. Although Rice was served with suit papers, he never notified National of Ratcliff's lawsuit. Rice failed to answer, and Ratcliff obtained a default judgment against him. More than thirty days later, after the judgment was final, Ratcliff notified National for the first time that it had sued Rice and recovered judgment.

Ratcliff then brought this action against National for the damages adjudged against Rice in the prior action. Ratcliff did not reassert against National his claim against Rice, but asserted only a right to recover directly from National on his judgment

---

1. Tex.Civ.Stat.Ann. art. 6701h (Vernon 1977, Supp.1987). All statutory references are to this article.

against Rice.[2] National denied Ratcliff's claim on the grounds that Rice had violated the requirement of the policy that he notify National of any suit against him, and that the policy conditioned any right of action against National upon Rice's compliance with this requirement. Ratcliff and National both moved for summary judgment. Ratcliff argued simply that National's policy defenses have been abolished by amendments to the Act. The district court granted National's motion and denied Ratcliff's.

## II

■ Section 1A(a) of the Act provides:

On and after January 1, 1982, no motor vehicle may be operated in this State unless a policy of automobile insurance in at least the minimum amounts to provide evidence of financial responsibility under this Act is in effect to insure against potential losses which may arise out of the operation of that vehicle.

This compulsory insurance requirement implies that any person injured in a motor vehicle accident by an insured under a liability policy is a legal beneficiary of the policy and may sue the insurer on the policy contract for damages covered by the policy. *Dairyland County Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 775–776 (Tex. 1983).

■ Ordinarily, a person who sues for performance of a contractual obligation, whether as a party to the contract or as a third party beneficiary, must prove that all contractual conditions prerequisite to performance have been satisfied. *Trevino v. Allstate Ins. Co.*, 651 S.W.2d 8, 11 (Tex. App.—Dallas 1983, writ ref'd n.r.e.). The rule applies to contracts of insurance. *Id.; Dairyland County Mut. Ins. Co. v. Roman*, 498 S.W.2d 154, 157 (Tex.1973). Specifically, failure to notify an insurer of suit against its insured as required by the policy precludes suit against the insurer if it is prejudiced by the lack of notice. *See Roman*, 498 S.W.2d at 157 n. 2.

The terms and conditions of insurance policies may be prescribed and modified by legislative action. As an example, section 21(f)(1) eliminates policy violations as a defense to an insurer's liability on so-called certified or assigned risk policies. As another example, the State Board of Insurance has required that an insurer show prejudice from failure to be notified of a suit against its insured before using such failure as a defense. *See Trevino*, 651 S.W.2d at 11 n. 1; *Roman*, 498 S.W.2d at 157 n. 2.

■ In this case Ratcliff argues that the compulsory insurance scheme adopted by 1981 amendments to the Act, making minimum insurance coverage a requirement for operation of a motor vehicle, in effect abolishes policy violations as a defense to an insurer's liability. Ratcliff reasons that because such policy defenses have been expressly abolished in connection with certified or assigned risk policies, also compulsory insurance, such defenses have been implicitly abolished by the new compulsory insurance scheme applicable to all motor vehicle operators. Ratcliff urges that such defenses are not consistent with a compulsory insurance scheme.

Plainly, the Legislature has not expressly abolished policy defenses to suits on automobile liability policies. When the Legislature has intended to abolish insurance policy defenses, it has known how to say so, in section 21(f)(1): "no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy." The Legislature included no such language applicable to all automobile liability policies in its 1981 amendments to the Act. We find the omission meaningful.

■ Equally plainly, we think, the Legislature has not impliedly abolished policy defenses to suits on automobile liability policies. Complete abolition of all automobile liability policy defenses would have far-reaching effects. It would transform the insurer's obligation from that of an

---

**2.** We are not called upon here to pass upon a plaintiff's right to retry against an insurer his case against its insured, and so we do not do so.

indemnitor to that of a surety and deprive it of the right to have the opportunity to contest the fact and extent of its insurer's liability. *See Baker v. Guar. Nat'l Ins. Co.*, 615 S.W.2d 303 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.). The cost of such a transformation would fall upon the entire State. The Legislature can be expected to express any such decision clearly, rather than leaving it to be implied.

Absent the expressed intent of the Legislature to abolish policy defenses in claims against automobile liability policies, we cannot supply such a result. In the past the courts have refused to modify the terms and effect of insurance policies by judicial decision, referring problems instead to the Legislature or administrative agency. Thus, the supreme court has refused to make prejudice to an insurer a condition to raising policy defenses, referring the problem instead to the Legislature or State Board of Insurance. *Members Mut. Ins. Co. v. Cutaia*, 476 S.W.2d 278 (Tex.1972). In that case the supreme court wrote:

> Our conclusion is, however, that on balance it is better policy for the contract of insurance to be changed by the public body charged with their supervision, the State Board of Insurance, or by the Legislature, rather than for this Court to insert a provision....

Even more directly related to the present case, a court of appeals has refused to read into the insurance requirements of the Texas Structural Pest Control Act a provision rendering policy notice conditions unenforceable. *Baker*, 615 S.W.2d 303. Absent an express provision, the court left the problem for the Legislature or agency to address, explaining:

> All would agree, however, that the amendment of the statute or promulgation of a rule is the function of the Legislature or agency, respectively, and not that of the courts. Deficiencies in the laws regulating an industry "... will not justify a court's excursion beyond its proper sphere in order to plug a hole or cure a supposed defect in the legislative scheme of things."

*Id*, at 306.

Consensus on the proper division between legislative and judicial authority is not quite as solid as *Baker* portrays it. Ratcliff directs our attention to decisions of three other courts which have held that the purpose of compulsory motor vehicle insurance schemes impliedly abolished policy defenses even absent an express provision so stating. *Sandoval v. Chenoweth*, 102 Ariz. 241, 428 P.2d 98 (1967); *Young v. Allstate Ins. Co.*, 248 Ga. 350, 282 S.E.2d 115 (1981); *Allen v. Canal Ins. Co.*, 433 S.W.2d 352 (Ky.Ct.App.1968). We are not inclined to follow other jurisdictions contrary to the clear views of our own supreme court.

■ Even without the benefit of precedent, experience itself teaches that regulation of the terms and effect of insurance policies is best left to the legislative process which allows consideration of the impact of change on society as a whole, and not attempted in the limited context of the facts of any one case. The decision Ratcliff would have us make would in effect regulate the insurance industry in this State, not just determine the rights of the parties to this case. A decision of this nature belongs to the Legislature.

We should not be read to suggest that the Legislature or State Board of Insurance ought to consider abolishing all automobile liability policy defenses, now that automobile insurance is compulsory. We see no inconsistency, as in *Baker*, in allowing such defenses to be raised. The Legislature's decision many years ago to abolish policy defenses to claims on certified policies does not mandate the same decision as to all automobile policies. Certified policies present specific, known, unusual risks, not associated with most policies.

■ Moreover, we see no injustice to the plaintiff in this case, as in *Cutaia*, importuning a change in the law. On the contrary, Ratcliff's taking a default judgment against Rice without notifying National, when settlement discussions with National were ongoing, appears to have taken advantage of National. Ratcliff's delaying to notify National of the default judgment until a few days after it became final casts

doubt upon its motives.[3] Had National known of the suit, it might have chosen to answer for Rice and to present evidence before the court. Even without Rice's co-operation, National would have had the opportunity to cross-examine Ratcliff as to his damage claims. National was severely prejudiced by lack of notice of the lawsuit. In similar circumstances one court has observed:

> It would be difficult to imagine more prejudice to [insurer], who had no knowledge of the lawsuit, and was given none by [claimants'] then attorney, until the time for appeal had expired.

*Wheeler v. Allstate Ins. Co.,* 592 S.W. 2, 3 (Tex.Civ.App.—Beaumont 1979, no writ). *Compare Allstate Ins. Co. v. Pare,* 688 S.W.2d 680 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.) (insurer not prejudiced by insured's failure to forward suit papers when insurer knew that suit had been filed and was pending, and even knew that default judgment had been rendered against another defendant).

We therefore conclude that National was entitled to avail itself of the policy defense of lack of notice of Ratcliff's suit against Rice. Inasmuch as National established its defense as a matter of law, the district court correctly granted its motion for summary judgment and denied Ratcliff's. Accordingly, Ratcliff's three points of error are overruled, and the judgment of the district court is affirmed.

---

**3.** Ratcliff's attorney suggested at oral argument that National nevertheless had a right to have the default judgment reviewed by writ of error.

The four elements necessary for a review by writ of error are: (1) it must be brought within six months of the date of judgment; (2) by a party to the suit; (3) who did not participate in the trial; and (4) error must be apparent from the face of the record. *Brown v. McLennan County Children's Protective Serv.,* 627 S.W.2d 390, 392 (Tex.1982). Although National could easily have met the first and third requirements, it is questionable whether it could have met the second. In any event, the scope of review allowed by the fourth requirement is severely restricted. The prejudice to National was not alleviated by the possibility of recourse to writ of error.