PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, Appellant,

v.

Hector Raul TREVINO and Mario Moyeda, Appellees.

No. 04–05–00113–CV.

Court of Appeals of Texas, San Antonio.

June 28, 2006.

Rehearing Overruled July 31, 2006.

Larry J. Goldman, Michelle M. Copeland, Adami, Goldman & Shuffield, Inc., Michael J. Murray, Sharon E. Callaway, Crofts & Callaway, P.C., San Antonio, for appellant.

Eugene D. Stewart, Knickerbocker, Heredia, Jasso & Stewart, P.C., Eagle Pass, for appellees.

Sitting: SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by KAREN ANGELINI, Justice.

In this appeal, we are presented with the issue of whether the cooperation clause of an automobile insurance policy, which requires an insured to cooperate with his defense, is a condition precedent to coverage under the policy. Because we hold that the cooperation clause is a condition precedent, we reverse and render.

### BACKGROUND

This appeal concerns a personal injury lawsuit brought in Maverick County by Hector Raul Trevino and Mario Moyeda against Alejandro Alvarado, a driver covered by automobile insurance issued by Progressive County Mutual Insurance Company ("Progressive"). In this Maverick County lawsuit, Trevino and Moyeda obtained a post-answer default judgment against Alvarado. Although Alvarado had timely notified Progressive that he had been served with a negligence suit brought by Trevino and Moyeda, according to Progressive, he later refused to cooperate with his defense. Because Alvarado refused to cooperate, on October 16, 2003, the lawyers hired by Progressive to represent Alvarado withdrew from their representation of Alvarado. However, before withdrawing, the lawyers filed a motion to continue the trial set for October 20, 2003. On October 20th, the district court called the case, and Trevino and Moyeda announced ready. Alvarado, however, did not appear for trial. The district court proceeded to hear evidence and argument from Trevino and Moyeda. It later entered a judgment awarding $45,000 to Trevino and $25,000 to Moyeda.

After obtaining the default judgment against Alvarado, Trevino and Moyeda filed this action against Progressive, arguing that by virtue of the judgment against Alvarado, they had become judgment creditors of Alvarado and thus, had standing to bring a claim directly against Progressive as third-party beneficiaries of the insurance policy. In their petition, Trevino and Moyeda pled that all conditions precedent to bringing the suit had been satisfied. Progressive, however, in its answer, denied that all conditions precedent had been satisfied: "Alejandro Alvarado and Plaintiffs, as judgment creditors, have failed to comply with the cooperation clause contained in the policy of insurance."

The case was tried to the bench. At trial, Trevino and Moyeda introduced three exhibits: the default judgment in the underlying case; the Progressive insurance policy; and Progressive's responses to Trevino and Moyeda's request for admissions. Trevino and Moyeda's attorney also testified with regard to attorney's fees. At the conclusion of Trevino and Moyeda's evidence, Progressive orally moved for judgment, arguing that satisfac-

tion of the cooperation clause is a condition precedent to coverage under the policy. Progressive argued that because the cooperation clause is a condition precedent, Trevino and Moyeda had the burden to show that Alvarado complied with the cooperation clause, and that by failing to present any evidence on the issue of cooperation, they had failed to prove the satisfaction of that condition. Trevino and Moyeda responded by arguing that the cooperation clause was not a condition precedent, but a covenant and that as a covenant, Progressive had the burden of proving that Alvarado did not fulfill the covenant and that Progressive was prejudiced as a result. The trial court denied Progressive's motion. Progressive then presented its evidence, and at the close of its evidence, again moved for judgment. The trial court again denied the motion and rendered judgment for Trevino and Moyeda.

Progressive then requested findings of fact and conclusions of law, which the trial court later entered. Among its findings, the trial court found that Alvarado "did not unreasonably refuse to cooperate in the investigation, settlement, or defense of the underlying litigation" and that the "defense of the underlying litigation by [Progressive] was not prejudiced by any failure of Alejandro Alvarado to cooperate." In its conclusions of law, the trial court determined that Alvarado had "not materially breach[ed] the subject insurance policy" and that Trevino and Moyeda were entitled to recover directly from Progressive on the judgment in the underlying suit for an amount capped by the limit imposed by the insurance policy. Progressive moved to modify the judgment and alternatively for a new trial, attacking the legal and factual sufficiency of the evidence to support these findings. The trial court denied the motions, and Progressive brought this appeal.

## COOPERATION CLAUSE

We must first consider whether the cooperation clause of an automobile insurance policy, which requires an insured to cooperate with his defense, is a condition precedent to coverage under the policy. This issue is a question of law that we review de novo. *See Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex.2004) (insurance policies are controlled by rules of interpretation and construction generally applicable to contracts); *MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex.1999) (interpretation of an unambiguous contract is a question of law, which is reviewed de novo).

According to Progressive, the cooperation clause of the policy is a condition precedent. In contrast, Trevino and Moyeda argue that the clause is a covenant. In interpreting whether the cooperation clause is a condition precedent or a covenant, we look to general principles of contract interpretation. *See Utica*, 141 S.W.3d at 202. "A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement." *Hohenberg Bros. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976); *see II Deerfield Ltd. v. Henry Bldg., Inc.*, 41 S.W.3d 259, 264 (Tex. App.-San Antonio 2001, pet. denied). As such, a condition precedent may "relate either to the formation of contracts or to liability under them." *Hohenberg Bros.*, 537 S.W.2d at 3. "Conditions precedent to an obligation to perform are those acts or events, which occur subsequently to the making of a contract, that must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Id.; Deerfield*, 41 S.W.3d at 264. Although no words in particular

are necessary for the existence of a condition, "such terms as 'if', 'provided that', 'on condition that', or some other phrase that conditions performance, usually connote an intent for a condition rather than a promise." *Hohenberg Bros.*, 537 S.W.2d at 3; *Deerfield*, 41 S.W.3d at 264–65. "In the absence of such a limiting clause, whether a certain contractual provision is a condition, rather than a promise, must be gathered from the contract as a whole and from the intent of the parties." *Hohenberg Bros.*, 537 S.W.2d at 3; *Deerfield*, 41 S.W.3d at 265. "However, where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result then the agreement will be interpreted as creating a covenant rather than a condition." *Hohenberg Bros.*, 537 S.W.2d at 3.

In *Harwell v. State Farm Mutual Automobile Insurance Co.*, the supreme court reiterated that "[c]ompliance with the notice of suit provision is a 'condition precedent to the insurer's liability on the policy.'" 896 S.W.2d 170, 173–74 (Tex.1995) (quoting *Weaver v. Hartford Acc. & Indem. Co.*, 570 S.W.2d 367, 369 (Tex.1978)). In that case, the notice of suit provision provided the following:

> We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses. If we show that your failure to provide notice prejudices our defense, there is no liability coverage under the policy. A person seeking coverage must:
>
> 1. *Cooperate with us in the investigation, settlement or defense of any claim or suit.*
>
> 2. *Promptly send us copies of any notices or legal papers received in connection with the accident or loss.*

*Id.* at 173 (emphasis added). In *Harwell*, the supreme court held that the notice of suit provision contained within subpart (2) was a condition precedent. *Id.* at 173–74. It would, therefore, follow that under *Harwell*, the cooperation clause contained within subpart (1) would also be a condition precedent.

■ Here, the cooperation clause of the policy issued by Progressive is almost the same:

## PART E—DUTIES AFTER AN ACCIDENT OR LOSS

### GENERAL DUTIES

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses. If we show that your failure to provide notice prejudices our defense, there is no liability coverage under the policy.

B. A person seeking any coverage must:

1. *Cooperate with us in the investigation, settlement, or defense of any claim or suit.*

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require, to physical exams by physicians we select. We will pay for these exams.

4. Authorize us to obtain:

   a. medical reports which are reasonably related to the injury or damages asserted; and

   b. other pertinent records.

5. When required by us:

   a. submit a sworn proof of loss.

b. submit to an examination under oath.

(emphasis added). Other than its formatting, the language in Progressive's policy is identical to that in *Harwell*. Therefore, applying *Harwell*, we hold that the cooperation clause is a condition precedent.

■ Because the cooperation clause is a condition precedent to coverage under the policy, Trevino and Moyeda had the burden of showing satisfaction of that condition. *See id.* at 173–74 (noting that insurer's obligation depends upon proof that all conditions precedent have been performed); *see also Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex.1998) (explaining that a "party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied"); TEX.R. CIV. P. 54 (requiring a plaintiff to plead that all conditions precedent have been performed and "to prove only such of them as are specifically denied by the opposite party").[1] At trial, however, Trevino and Moyeda did not present any evidence that Alvarado had complied with the cooperation clause.

■ Even though there was no evidence that the condition precedent of cooperation was satisfied, Progressive will not escape liability unless it was prejudiced by the lack of cooperation. *See Harwell*, 896 S.W.2d at 173–74 (explaining that even though condition precedent was not satisfied, insurer does not escape liability unless it was prejudiced). Prejudice may be established either as a matter of fact or as a matter of law. *Compare Harwell*, 896 S.W.2d at 174 (holding that prejudice existed as a matter of law), *with Struna v. Concord Ins. Servs., Inc.*, 11 S.W.3d 355, 359 (Tex.App.-Houston [1st Dist.] 2000, no

pet.) (holding that summary judgment was improperly granted because the summary judgment evidence raised a material fact issue as to prejudice).

In *Harwell*, the supreme court held that "[t]he failure to notify an insurer of a default judgment against its insured until after the judgment has become final and nonappealable prejudices the insurer as a matter of law." *Harwell*, 896 S.W.2d at 174. In doing so, the supreme court reasoned that had the insurer "received notice, it could have undertaken [the insured]'s defense and minimized its insured's liability." *Id.* Therefore, the court concluded that the insured's failure to notify the insurer of the suit prejudiced it as a matter of law. *Id.*

■ Trevino and Moyeda argue that the "evidence clearly supports the finding by the trial court that Alejandro Alvarado did not unreasonably refuse to cooperate in the defense of the underlying litigation." For support, Trevino and Moyeda point to a telephone call that Progressive received from Carol Alvarado, Alejandro Alvarado's wife. In the recorded message, Carol Alvarado stated the following:

"Hello. This is Carol Alvarado calling, and I'm calling in response to a letter of March 17, 2003, that I just received that's postmarked April 16, 2003. I'm speaking on behalf of my husband because I'm his guardian. He's had more problems since this accident of April 17th and the reason I'm calling is, as far as we're concerned, you can just go ahead and deny coverage for that accident; that would be fine with us if you just deny coverage with regard to the lawsuit. Just inform the parties that you're denying coverage, send us a copy of the letter, and I mean that's fine. We

---

1. In its answer, Progressive denied that Alvarado and "Plaintiffs, as judgment creditors" complied with the cooperation clause contained in the policy.

have—we having nothing that they can—there's nothing that they can do to us by suing us because, well, you know, we're pretty well judgment proof anyway, and my husband is injured. I, myself, have cancer, so we just don't have the resources, the energy to be involved in this at all. I don't have a phone. I can't call you back, so just go ahead and deny coverage with regard to that accident of that day, April 17, 2001. I'm speaking on behalf of my husband as his guardian and that's fine with us. Thanks."

Trevino and Moyeda argue that this telephone call shows that Alvarado did not unreasonably refuse to cooperate. We disagree. The telephone call is evidence that Alvarado wholly failed to cooperate and that the Alvarados wanted Progressive to "deny coverage" because they were "pretty much judgment proof." Additionally, there is other evidence in the record showing that Progressive was denied the ability to meaningfully defend Alvarado. Although the pleadings themselves were not admitted into evidence, there was testimony to the effect that Alvarado filed pro se pleadings in the underlying case. He did so even though Progressive had hired an attorney to represent him and that attorney had already filed an answer on his behalf. Indeed, not only did Alvarado file a pro se answer, but he also filed a pro se counterclaim. And, according to Trevino and Moyeda's attorney, the pro se counter-

claim was frivolous and filed in bad faith.[2] The evidence at the hearing also showed that Alvarado was adamant that a third vehicle caused the accident and that Progressive not pay any money on the claim.[3]

Given Alvarado's lack of cooperation with his defense, his filing of a pro se answer and frivolous counterclaim despite having counsel hired by Progressive to represent him, his adamancy about Progressive not paying on the claim, and his guardian's telephone message indicating that Alvarado did not intend "to be involved in this at all", the attorney hired by Progressive was simply not permitted to appear on Alvarado's behalf in court. *See In re Users Sys. Servs., Inc.*, 22 S.W.3d 331, 335 (Tex.1999) (orig.proceeding) (noting that a client can discharge an attorney at any time, with or without cause and without notifying the court); TEX. DISCIP. R. PROF'L COND. 1.15(a)(3) & cmt. 4 ("A lawyer shall decline to represent a client or, where representation has commenced, shall withdraw ... from the representation of a client, if ... the lawyer is discharged, with or without good cause."). Because the lawyer hired by Progressive to represent Alvarado was not permitted to appear on Alvarado's behalf, the lawyer was prevented from mounting a defense to limit Alvarado's liability and damages and from stopping the entry of the default judgment. Moreover, the lawyer hired by Progressive to represent Alvarado was un-

**2.** Trevino and Moyeda's attorney reasoned that because Trevino and Moyeda's vehicle was stopped at the time of the accident, Trevino and Moyeda could not possibly be at fault.

**3.** All of the evidence discussed here was admitted at trial and can be considered by us on appeal. We note, however, that we cannot consider other evidence not admitted at trial. At the hearing, Progressive offered numerous exhibits into evidence for the purpose of proving Alvarado's lack of cooperation and the resulting prejudice suffered by Progressive.

Progressive, however, in the face of hearsay objections, made it clear to the court that the exhibits were not offered for the truth of the matters contained therein, but instead were offered only to show what information was contained in Progressive's files. We, therefore, are unable to consider the various matters contained therein for the purpose of proving whether Alvarado, in fact, cooperated with Progressive and/or whether Progressive was prejudiced by Alvarado's actions.

able to file a motion for new trial or seek other appellate relief. *See* Rick Virnig, *The Insured's Duty to Cooperate*, 6 J. OF TEX. INS. L. 11, 19 (Fall 2005) ("If [the insured's] failure [to cooperate] involves not just a lack of diligence in answering discovery, reluctance to appear for depositions, etc. and extends to failing to attend trial, it is universally acknowledged that such a failure is a serious breach of the duty to cooperate."). As such, we hold that Progressive was prejudiced as a matter of law. *See Harwell*, 896 S.W.2d at 174.

### TEXAS MOTOR VEHICLE SAFETY RESPONSIBILITY ACT

■ Trevino and Moyeda argue in the alternative that even if Alvarado failed to comply with the cooperation clause, the judgment should still be affirmed because the cooperation clause violates the Texas Motor Vehicle Safety Responsibility Act, codified in the Texas Transportation Code. Trevino and Moyeda emphasize that the 1995 amendments to this Act were intended to protect injured members of the public and that the cooperation clause violates this intent. For support, they point to section 601.073(c) of the Texas Transportation Code:

> The liability of the insurance company for the insurance required by this chapter becomes absolute at the time bodily injury, death, or damage covered by the policy occurs. The policy may not be canceled as to this liability by an agreement between the insurance company and the insured that is entered into after the occurrence of the injury or damage.

A statement made by or on behalf of the insured or a violation of the policy does not void the policy.

TEX. TRANSP. CODE ANN. § 601.073(c) (Vernon 1999). Thus, Trevino and Moyeda conclude that pursuant to section 601.073(c), the policy is not voided by Alvarado's lack of cooperation. We disagree.

The language of section 601.073(c) has not changed substantially from the original provision of the Safety Responsibility Law, section 21(f)(1) of article 6701h of the Texas Civil Statutes:

> The liability of the insurance company with respect to the insurance required by this Act shall become absolute whenever injury or damage covered by said motor vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance company and insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy.

*See* Act of June 28, 1951, 52d Leg., R.S., ch. 498, § 1 *et seq.*, 1951 Tex. Gen. Laws 1210, 1220–21. Between 1951 and 1981, article 6701 was amended at least seven times, but none of those amendments altered the language of section 21(f)(1).[4] During that time period, Texas courts recognized that if an insured did not comply with conditions precedent, an insurance company would not be liable. *See, e.g., Dairyland County Mut. Ins. Co. v. Roman*, 498 S.W.2d 154, 157–58 (Tex.1973); *Members Mut. Ins. Co. v. Cutaia*, 476

---

**4.** *See* Act of June 19, 1975, 64th Leg., R.S., ch. 347, § 1 *et seq.*, 1975 Tex. Gen. Laws 931; Act of June 15, 1971, 62d Leg., R.S., ch. 944, § 1 *et seq.*, 1971 Tex. Gen. Laws 2866; Act of June 8, 1971, 62d Leg., R.S., ch. 744, § 1 *et seq.*, 1971 Tex. Gen. Laws 2389; Act of June 4, 1969, 61st Leg., R.S., ch. 433, § 1 *et seq.*, 1969 Tex. Gen. Laws 1467; Act of June 18, 1965, 59th Leg., R.S., ch. 703, § 1 *et seq.*, 1965 Tex. Gen. Laws 1636; Act of May 6, 1965, 59th Leg., R.S., ch. 131, § 1 *et seq.*, 1965 Tex. Gen. laws 298; Act of June 11, 1963, 58th Leg., R.S., ch. 506, § 1 *et seq.*, 1963 Tex. Gen. Laws 1320.

S.W.2d 278, 278 (Tex.1972); *Employers Cas. Co. v. Mireles*, 520 S.W.2d 516, 518 (Tex.Civ.App.-San Antonio 1975, writ ref'd n.r.e.).

In 1981, article 6701h was amended, and section 1A imposed compulsory liability insurance; however, the language of section 21(f) was not altered. *See* Act of June 17, 1981, 67th Leg., R.S., ch. 800, § 1 *et seq.*, 1981 Tex. Gen. Laws 3053. From 1981 to 1995, the Act was amended numerous times, but none of the amendments modified the language of section 21(f)(1).[5] And, Texas courts, including the Texas Supreme Court in *Harwell*, continued to uphold the validity of an insurer's policy defenses based on the non-occurrence of conditions precedent. *See, e.g., Harwell*, 896 S.W.2d at 175; *Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165–66 (Tex.1993); *Ratcliff v. Nat'l County Mut. Fire Ins. Co.*, 735 S.W.2d 955, 957 (Tex.App.-Dallas 1987, writ dism'd w.o.j.). Indeed, in an opinion in 1987, Justice Hecht, then on the Dallas Court of Appeals, concluded that the compulsory insurance scheme adopted in 1981 did not abolish policy defenses that had been previously available to insurers. *See Ratcliff*, 735 S.W.2d at 957.

Trevino and Moyeda argue that the 1995 amendments abolished policy defenses.

However, the Legislature's codification of section 601.073(c) of the Transportation Code did not materially modify the existing statutory language. *Compare* TEX. TRANSP. CODE ANN. § 601.073(c) (Vernon 1999), *with* Act of June 17, 1993, 73d Leg., R.S., ch. 685, § 14.01, 1993 Tex. Gen. Laws 2559, 2671. The codified version eliminates the semicolons and incorporates periods to break the provision into three, separate, simplified sentences. It was part of the Legislature's effort to "clarify and simplify the statutes and to make the statutes more accessible, understandable, and usable." TEX. GOV'T CODE ANN. § 323.007(a) (Vernon 2005). Section 601.073(c) did not materially modify the existing statute.[6] Thus, we hold that the cooperation clause is not voided by section 601.073(c).

Indeed, recently, in a similar case involving the failure of an insured to provide notice of suit, we were asked to consider whether "the 'no coverage' provision is void as against public policy." *Villarreal v. Tex. Farmers Ins. Co.*, No. 04–04–00446–CV, 2005 WL 2138174, at *1 (Tex. App.-San Antonio Sept. 7, 2005, pet. denied). We held that this provision has been "upheld under established Texas law

---

**5.** *See* Act of June 17, 1993, 73d Leg., R.S., ch. 685, § 14.01, 1993 Tex. Gen. Laws 2559, 2671; Act of August 30, 1991, 72d Leg., 2d C.S., ch. 12, § 15.01, 1991 Tex. Spec. Laws 252, 334–36; Act of June 16, 1991, 72d Leg., R.S., ch. 806, § 1 *et seq.*, 1991 Tex. Gen. Laws 2821; Act of June 14, 1989, 71st Leg., R.S., ch. 449, § 1 *et seq.*, 1989 Tex. Gen. Laws 1610; Act of June 18, 1987, 70th Leg., R.S., ch. 580, § 1 *et seq.*, 1987 Tex. Gen. Laws 2284; Act of June 11, 1987, 70th Leg., R.S., ch. 289, § 1 *et seq.*, 1987 Tex. Gen. Laws 1649; Act of May 18, 1987, 70th Leg., R.S., ch. 104, § 4, 1987 Tex. Gen. Laws 248; Act of June 3, 1985, 69th Leg., R.S., ch. 239, § 17, 1985 Tex. Gen. Laws 1181; Act of June 19, 1983, 68th Leg., R.S., ch. 797, § 1 *et seq.*, 1983 Tex. Gen. Laws 3122; Act of June 17,

1983, 68th Leg., R.S., ch. 436, § 1 *et seq.*, 1983 Tex. Gen. Laws 2496.

**6.** The revisor's note to section 601.073 discusses the revisions to section 21(f). For example, section 21(f) stated that the policy may not be "canceled or annulled." Section 601.073 omitted the reference to "annulled" "because 'annulled' is included within the meaning of 'canceled.'" TEX. TRANSP. CODE ANN. § 601.073 revisor's note (2) (Vernon 1999). Similarly, section 601.073 omitted the reference to "defeat." While section 21(f) stated that a violation of the policy may not "defeat or void" the policy, section 601.073 omitted the reference to "defeat" "because 'defeat' is included within the meaning of 'void.'" *Id.* revisor's note (3).

for too long for this Court to now hold it is void as against public policy." *Id.* (citing *Harwell,* 896 S.W.2d at 173–74).

Finally, interpreting section 601.073(c) as an abrogation of policy defenses would lead to absurd results. Such an interpretation "would transform the insurer's obligation from that of an indemnitor to that of a surety and deprive it of the right to have the opportunity to contest the fact and extent of its insurer's liability." *Ratcliff,* 735 S.W.2d at 957–58 (Hecht, J.). Every insurer would have a duty to defend and indemnify its insured in every filed case, regardless of whether the asserted claim was actually within the scope of coverage, regardless of whether the insurer had notice of the suit, and regardless of whether the insured cooperated with the defense of the claim.

### CONCLUSION

Because Trevino and Moyeda failed to present any evidence of cooperation and because Progressive was prejudiced as a matter of law, Trevino and Moyeda cannot recover from Progressive. *See Harwell,* 896 S.W.2d at 175–76; *see also State Farm Lloyds Ins. Co. v. Maldonado,* 963 S.W.2d 38, 41–42 (Tex.1998). We, therefore, reverse the judgment of the trial court and render a take-nothing judgment in favor of Progressive.

Dissenting opinion by SANDEE BRYAN MARION, Justice.

SANDEE BRYAN MARION, Justice, dissenting.

I agree with the majority that the cooperation clause is a condition precedent to coverage under the policy. I also agree with the majority that the cooperation clause does not violate the Texas Motor Vehicle Safety Responsibility Act. However, I disagree with the majority's conclusion that a telephone call from the insured's wife to Progressive supports a finding that the "lawyer hired by Progressive was simply not permitted to appear on Alvarado's behalf in court." Therefore, I respectfully dissent.

Progressive bore the burden of establishing it was prejudiced by Alvarado's lack of cooperation. *See Struna v. Concord Ins. Serv.,* 11 S.W.3d 355, 360 (Tex. App.-Houston [1st Dist.] 2000, no pet.). The majority's determination that Progressive established prejudice as a mater of law is premised on the majority's conclusion that "the attorney hired by Progressive was simply not permitted to appear on Alvarado's behalf in court." Nothing in the record supports this conclusion. In her telephone message, Carol Alvarado did not request that the attorney withdraw. She asked only that Progressive deny the claim. Alvarado's "adamancy" that Progressive not pay the claim is not inconsistent with the position taken by most defendants in personal injury lawsuits. Also, Progressive withdrew its representation only a few short days before the scheduled trial date, and there is no evidence in the record that Progressive suffered prejudice, up to that point in time, due to Alvarado's desire to deny the claim. Because Progressive had withdrawn its representation of Alvarado shortly before the default judgment was rendered, it cannot now, after the fact, point to the default judgment as establishing prejudice.

For these reasons, I would affirm the trial court's judgment.