**REVERSE and RENDER; and Opinion Filed August 22, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-16-01062-CV

**AMERICAN NATIONAL COUNTY MUTUAL INSURANCE COMPANY, Appellant**
**V.**
**JONATHAN A. MEDINA, Appellee**

**On Appeal from the 68th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-14472**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Boatright
Opinion by Justice Brown

Jonathan Medina was injured when he was struck by a truck listed as a covered vehicle on an American National County Mutual Insurance Company (ANPAC) policy. ANPAC denied coverage on Medina's claim, and Medina subsequently obtained a default judgment against the driver. After the driver assigned her claims to Medina, Medina sued ANPAC.

Following a four-day trial, a jury made findings in favor of both Medina and ANPAC. As to ANPAC, the jury found the driver failed to cooperate with its investigation, settlement, or defense of the underlying suit and that such failure prejudiced ANPAC. The trial court ignored these findings and rendered judgment on the jury's findings in Medina's favor on his contractual and extra-contractual claims. ANPAC raises several issues on appeal. Because we conclude the jury's favorable findings to ANPAC are dispositive, we reverse the trial court's judgment and render a take-nothing judgment on Medina's claims.

On October 30, 2009, Angel Freeman ran a stop sign and crashed into Medina who was riding a motorcycle. Medina was injured and his motorcycle was totaled. Angel was driving a 1998 Dodge Ram truck that at the time was listed as a covered vehicle on an ANPAC automobile insurance policy belonging to Paul and Katie Freeman. Angel is Paul's sister. There is no dispute that if the truck was covered under the policy, Angel was a covered "insured."

After the collision, however, a question arose as to who owned the truck and whether it was insured by Paul's policy. If the truck was not owned by Paul, it could not be covered by his policy. Paul and Angel both told the insurance company that Paul sold the vehicle to Angel for cash four weeks before the accident, on October 1, 2009, and both gave the insurance company written statements to that effect.[1] According to Paul, he gave the truck's title to Angel, who was supposed to put the title in her name and obtain insurance, but she did not. Based on these statements and after concluding its investigation, ANPAC canceled coverage on the Dodge Ram truck effective October 1, refunded the premiums paid after that date to Paul and Katie, and denied coverage. On December 8, 2009, ANPAC notified Medina, through his attorney, of the decision and closed the file on the case.

Medina then sued Paul and Angel, and ANPAC retained defense counsel for Paul. ANPAC again contacted Paul and Angel, who again reported that Angel was the owner of the vehicle. During the pendency of the lawsuit, Medina made a *Stowers* demand to ANPAC offering to settle his claims against Paul and Angel for the available limits of Paul's policy. While this demand was pending, the trial court granted Paul's no-evidence motion for summary judgment on the only claim against him, negligent entrustment of the vehicle, and dismissed the claim.[2] Although served, Angel did not appear in the suit. After Paul was dismissed from the suit, Medina obtained

---

[1] Katie told the adjustor that Angel paid $1,200 for the truck, and Angel told the adjustor she paid $2,000. Later, Paul and Angel said Angel paid $1,500. ANPAC asked for a bill of sale during the initial investigation but did not receive one.

[2] Paul had asserted there was no evidence of two elements of the claim: that he entrusted a vehicle to Angel and that he knew or should have known Angel was an unlicensed, incompetent, or reckless driver. The trial court's order did not state the basis of the ruling.

a default judgment against Angel for damages resulting from the collision. Later, Angel assigned her rights in the insurance policy to Medina, and Medina then brought this lawsuit against ANPAC for breach of contract and other extra-contractual claims.

The primary issue at trial was ownership of the vehicle at the time of the collision because if Paul did not own the vehicle, there was no coverage under the policy. Both sides presented evidence on the issue and on whether the insurance company's actions were reasonable. For example, Medina presented evidence that on October 2, 2009, the day after Paul and Angel said the sale took place, Paul applied for title to the truck in his name. After hearing the evidence, the jury found Paul owned the truck on the date of the collision. The jury also made the following findings favorable to Medina: ANPAC failed to comply with the provisions of the policy; ANPAC failed to comply with a duty of good faith and fair dealing to Medina and that failure proximately caused damages to Medina, as assignee of Angel; ANPAC was negligent in failing to accept the terms of the *Stowers* demand letter; and $50,000 was a reasonable fee for Medina's counsel.

But the jury also made findings favorable to ANPAC that impacted ANPAC's obligations under the policy. Specifically, in questions 2 and 3, the jury found that Angel did not cooperate with ANPAC in the investigation, settlement, or defense of the underlying lawsuit prior to ANPAC's coverage determination and found Angel's conduct prejudiced ANPAC.

Both parties moved for judgment. ANPAC's motion relied on several grounds, one of which was the jury's answers to questions 2 and 3. ANPAC argued that assuming Angel was a covered insured under the ANPAC policy, she failed to satisfy all conditions precedent to coverage and ANPAC therefore had no duty or obligation to her—or Medina as her assignee—under the policy. In his response to ANPAC's motion for judgment, Medina asserted there was "no evidence of prejudice" and the findings to questions 2 and 3 should be disregarded. The trial court ultimately rendered judgment in Medina's favor, finding that coverage was in effect on the truck on the date of the collision and ordering that Medina recover damages and attorney's fees from ANPAC. The

trial court did not set aside the answers to questions 2 and 3 or otherwise mention them in the judgment. ANPAC appealed.

In its third issue, ANPAC argues the trial court erred by failing to give legal effect to the jury's findings that Angel failed to cooperate and her actions were prejudicial. ANPAC argues these findings mandate that coverage does not exist under the policy. We agree.

An insurer's obligation depends upon proof that all conditions precedent have been performed. *Martinez v. ACCC Ins. Co.*, 343 S.W.3d 924, 929 (Tex. App.—Dallas 2011, no pet.). The ANPAC policy at issue here required a person seeking coverage to "[c]ooperate with us in the investigation, settlement or defense of any claim or suit." The language of the cooperation clause is identical to that in *Progressive County Mutual Insurance Co. v. Trevino*, 202 S.W.3d 811, 815–16 (Tex. App.—San Antonio 2006, pet. denied), where the court held the clause was a condition precedent to coverage. Because the cooperation clause is a condition precedent to coverage under the policy, Medina had the burden of showing Angel cooperated with ANPAC. *See Martinez*, 343 S.W.3d at 929; *Trevino*, 202 S.W.3d at 816. But a lack of cooperation will not operate to discharge the insured's obligations under the policy unless the insurer is prejudiced. *Martinez*, 343 S.W.3d at 929. ANPAC had the burden of showing it was prejudiced by the failure to cooperate. *See Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, No. 4:09-0422, 2016 WL 5539895, at *15 (S.D. Tex. Sept. 29, 2016). If an insurer is actually prejudiced or deprived of a valid defense by the insured's failure to cooperate, the insurer's obligations under the policy are discharged. *See Martinez*, 343 S.W.3d at 930.

Here, the legal effect of the jury's answers to questions 2 and 3 was to discharge ANPAC's obligations under the policy. The trial court did not set aside these findings; it simply ignored them. On appeal, Medina not has not brought a separate issue challenging the sufficiency of the evidence to support the findings. But to the extent his brief raises the issue, we conclude there was some evidence to support both findings.

"Cooperation clauses in insurance contracts 'fulfill the reasonable purpose of enabling the insurer to obtain relevant information concerning the loss while the information is fresh.'" *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 F. App'x 162, 165 (5th Cir. 2012) (quoting *Holden v. Connex-Metalna Mgmt. Consulting*, No. Civ.A.98-3326, 2000 WL 1741839, at *2 (E.D. La. Nov. 22, 2000)). The duty to cooperate is "intended to guarantee to insurers the right to prepare adequately their defenses on questions of substantive liability." *Mid-Continent Cas.*, 2016 WL 5539895, at *24 (explaining cooperation clause with similar language). Determination of what constitutes a breach of the cooperation clause of a liability policy is usually a question of fact. *Id.* at *16; *Frazier v. Glen Falls Indem. Co.*, 278 S.W.2d 388, 391 (Tex. Civ. App.—Fort Worth 1955, writ ref'd n.r.e.). The cooperation clause is violated where the insured's conduct is not "reasonable and justified under the circumstances." *Mid-Continent Cas.*, 2016 WL 5539895, at *16. An insured who fails to make full, frank, and fair disclosure of the facts or makes false statements that materially prejudice an insurer's ability to defend the lawsuit on the insured's behalf violates her duty under the policy. *Frazier*, 278 S.W.2d at 392; *Martin v. Travelers Indem. Co.*, 450 F.2d 542, 553 (5th Cir. 1971). Further, an insured is obliged to refrain from any fraudulent or collusive act which might operate as a means of prejudice to the insurance company in the conduct of the defense against, or settlement of, the claim made against her. *Frazier*, 278 S.W.2d at 392.

Both parties rely to some extent on *United States Casualty Co. v. Schlein*, 338 F.2d 169 (5th Cir. 1964). In that case, Schlein, the insured, was in a collision with another vehicle. *Id.* at 170. In a pretrial deposition, Schlein lied about how the accident occurred. *Id.* at 170–71. The insurer withdrew from defending him in a lawsuit brought by the occupants of the other vehicle, citing his breach of the cooperation clause. *Id.* at 172. Schlein settled the lawsuit and then sued the insurance company seeking to be reimbursed for the amount of the settlement. *Id.* The trial court awarded Schlein reimbursement, finding that his "misstatements" did not constitute a

substantial and material breach of the cooperation clause and that the insurer did not suffer prejudice from those misstatements. *Id.* at 172–73.

The Fifth Circuit noted that purposeful falsification of material information by the insured is a breach of the cooperation clause. *Id.* at 173. It therefore questioned the trial court's finding that the false statements at issue did not constitute a breach. *Id.* at 174. Nevertheless, the insurer did not present any evidence that it was prejudiced by its insured's lies. *Id.* at 174–75. The parties stipulated that the settlement reached was fair and reasonable. *Id.* at 172. Without a finding of prejudice, the insurance company's defense of breach of cooperation failed. *Id.* at 175.

ANPAC contends *Schlein* demonstrates that Angel's lies about ownership of the car constitute a failure to cooperate. Medina responds that Angel's duty to cooperate was "not a duty of absolute truthfulness" and that she did cooperate by speaking with ANPAC on numerous occasions and providing a recorded statement.[3] Medina would limit *Schlein* to false statements about the circumstances of the accident. Medina also argues that, as in *Schlein*, there is no evidence of prejudice in this case.

We agree there is not a duty of absolute truthfulness to the extent that not every false statement prejudices an insurer. However, here, Angel (and Paul) lied about ownership of the truck, the very basis for whether or not there was coverage under the policy. During ANPAC's investigation and thereafter, Angel represented that she owned the truck at the time of the collision. This was not a statement based on a faulty observation, recollection, actual but genuine mistake, or the like. *See id.* at 173. Rather, given the jury's finding that Paul owned the truck, it could only

---

[3] Medina's brief suggests, as his attorney did during closing arguments, ANPAC's assertion that Angel breached the cooperation clause was related to notice provisions of the policy. Medina contends that provisions in an insurance policy requiring notice of a claim or lawsuit may be waived and that ANPAC waived compliance with such provisions in this case. ANPAC instead argued Angel breached the cooperation clause by making false statements about the sale of the truck. Given the jury's finding that Paul owned the truck at the time of the collision, the jury necessarily believed Angel failed to cooperate by lying about who owned the truck. Accordingly, we need not address Medina's arguments about notice and waiver.

mean the jury believed Angel consciously and purposely lied about a fact material and dispositive of coverage.

Medina argues that ANPAC failed to show how its handling of his case was affected by Angel's lies. But based on Angel's untrue statements, ANPAC denied coverage and made the decision not to defend her. It also refused Medina's offer to settle his case against Paul and Angel for the $50,000 bodily injury policy limit, plus $15,332.60 for property damages. Instead Medina obtained a default judgment against Angel for $211,629, which he then sought to recover from ANPAC. Medina does not explain why this evidence is insufficient to show prejudice.

In sum, the jury's answers to questions 2 and 3 are supported by the evidence. Medina cannot conclusively establish that Angel cooperated with ANPAC in its investigation, settlement, or defense of his claims. There is also more than a scintilla of evidence Angel's conduct prejudiced ANPAC. *See Long v. Long*, 196 S.W.3d 460, 464, 466 (Tex. App.—Dallas 2006, no pet.) (discussing appropriate burdens of proof when challenging adverse findings). The legal effect of these findings was to discharge ANPAC's obligations under the policy. The trial court erred in failing to render judgment in accordance with these findings. We sustain ANPAC's third issue. As a result, we need not address its other issues.

We reverse the trial court's judgment and render a take-nothing judgment on Medina's claims.

/Ada Brown/
_____
ADA BROWN
JUSTICE

161062F.P05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AMERICAN NATIONAL COUNTY
MUTUAL INSURANCE COMPANY,
Appellant

No. 05-16-01062-CV      V.

JONATHAN A. MEDINA, Appellee

On Appeal from the 68th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-14472.
Opinion delivered by Justice Brown,
Justices Bridges and Boatright
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and judgment is **RENDERED** that:

Jonathan A. Medina take nothing on his claims against American National County
Mutual Insurance Company.

It is **ORDERED** that appellant American National County Mutual Insurance Company
recover its costs of this appeal from appellee Jonathan A. Medina.

Judgment entered this 22nd day of August, 2018.