**Harold W. CRISWELL, Petitioner,**

v.

**EUROPEAN CROSSROADS SHOPPING CENTER, LTD., et al., Respondents.**

No. C–8660.

Supreme Court of Texas.

June 20, 1990.

**946**

Joe D. Gregory, Grapevine, and Gary W. Sibley, Dallas, for petitioner.

Ben L. Krage, Robert J. French, and F. Glenn Smith, III, Dallas, for respondents.

ON MOTION FOR REHEARING

HIGHTOWER, Justice.

Respondents' motion for rehearing is granted in part and denied in part. The opinion and judgment of February 21, 1990 are withdrawn and the following is substituted.

This case involves an alleged breach of a contract for services. Harold W. Criswell, a professional engineer, entered into an agreement with R.M. Ginsberg, as general partner for European Crossroads Shopping Center, Ltd. (hereafter referred to as "Crossroads"), to prepare plans to convert a shopping center into condominium units. The agreement provided that Criswell's fee would be one percent (1%) of the proceeds from the sale of the center on a condominium basis or as a whole project. It is the latter phrase, "or as a whole project," that forms the basis of this dispute. After sale of the shopping center under a contract for deed, Ginsberg and Crossroads refused to pay Criswell. Criswell sued both Ginsberg and Crossroads for breach of contract and attorney's fees. The trial court granted Crossroads' motion for directed verdict and rendered judgment in favor of Crossroads. The trial court determined that the center must have been sold as a *condominium* project (i.e., a condition precedent) to entitle Criswell to payment. The court of appeals affirmed. The issue before this court is whether the agreement contained a condition precedent that the shopping center be sold on a condominium basis to entitle Criswell to payment for his services. For the reasons explained herein, we reverse the judgments of the trial court and the court of appeals, and remand to the trial court for further proceedings.

Criswell is a registered engineer and surveyor. Ginsberg was general partner for Crossroads, a Texas limited partnership formed for the purpose of building a shopping center. Criswell was hired by Crossroads in 1970 to do the structural engineering for the center. After the center was built, it became clear that the venture was a financial failure. In 1979, Ginsberg approached Criswell to assist him in preparing the project for sale. Ginsberg's idea was to divide the center into condominium units. In 1980, Criswell agreed to prepare the plans and drafted an agreement which stated:

> I will compile and prepare all information necessary for real estate agents to show and sell the above property on a condominium basis; i.e. to be able to sell each individual building (Building # 1 through Building # 9) as a separate item with necessary information to form an association to accommodate maintenance, taxes, necessary exterior utilities and any other community expenses; *or as a whole project.*
>
> I will also prepare and have available any and all necessary information that a proposed owner or owners would deem pertinent or desirable and/or prepare the information that he may desire at his request.
>
> For the above services, the European Crossroads will compensate to [sic] me at my office, presently in suite # 141, 2829 W. Northwest Highway, Dallas, Texas, a fee of one percent (1%) of the total sales price of each building, buildings, *or entire project* at the time of closing.

(Emphases added.) Ginsberg signed the agreement on behalf of the limited partnership.

Over the next four months, Criswell compiled data on the shopping center. His primary task was to determine exactly how many square feet were in each unit since various tenants had relocated interior walls over the years. This data was printed in a book at Criswell's expense and several copies were delivered to Ginsberg.

Soon thereafter, Ginsberg asked the center's mortgagee, Clevetrust, for permission to sell the project on a condominium basis. Clevetrust refused, and Ginsberg relayed this information to Criswell. Criswell received no further communications from Ginsberg regarding payment for the book or his services. In 1981, Crossroads sold the entire shopping center under a contract for deed for $12,850,000. It was not until 10 months later that Criswell learned of the transfer. Crossroads refused to pay Criswell his 1% fee.

■ Subsequently, Criswell sued Ginsberg and Crossroads for breach of contract and attorney's fees. Criswell asserted that the agreement was enforceable, whether the center was transferred as a number of separate units of a condominium project, or undivided "as a whole project." Further-

more, Criswell contends that the information he provided was useful and could have been used to sell the center either as individual condominium units or as a whole project. Crossroads responded that the agreement became unenforceable once the center was transferred as a whole unit and that they had no use for Criswell's data if the center was not sold as condominium units. Criswell and Crossroads agreed that the letter agreement was not ambiguous. At the conclusion of Criswell's case-in-chief, the trial court granted Crossroads' motion for directed verdict and rendered judgment in favor of Crossroads. The trial court determined that a condition precedent existed which required that the center be sold as condominiums (either individually or as a condominium complex) in order for Criswell to receive payment. The court of appeals affirmed, finding that the condition precedent was not satisfied, and therefore, Criswell was precluded from any recovery. In his Application for Writ of Error, Criswell argues that the letter agreement did not require a sale of the shopping center on a condominium basis as a condition precedent to his right to receive compensation. We agree.

■ In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract. *Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex.1983); *Gallup v. St. Paul Ins. Co.*, 515 S.W.2d 249 (Tex.1974) (strongest indication of what a contract requires is determined by what its words plainly state). In order to make performance specifically conditional, a term such as "if", "provided that", "on condition that", or some similar phrase of conditional language must normally be included. *Landscape Design v. Harold Thomas Excavating*, 604 S.W.2d 374, 377 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). If no such language is used, the terms will be construed as a covenant in order to prevent a forfeiture. While there is no requirement that such phrases be utilized, their absence is probative of the parties intention that a promise be made, rather than a condition imposed. *See Hohenberg Bros. Co. v.*

*George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976).

■ In construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible. *Schwarz-Jordan, Inc. v. Delisle Construction Co.*, 569 S.W.2d 878 (Tex.1978); *Hohenberg Bros.*, 537 S.W.2d at 3. When the intent of the parties is doubtful or when a condition would impose an absurd or impossible result, the agreement will be interpreted as creating a covenant rather than a condition. *Hohenberg Bros.*, 537 S.W.2d at 3. Because of their harshness in operation, conditions are not favorites of the law. *Sirtex Oil Industries, Inc. v. Erigan*, 403 S.W.2d 784, 787 (Tex.1966); *Hohenberg Bros.*, 537 S.W.2d at 3.

■ Although it is well settled that the words contained in the instrument, and not the punctuation, should be the controlling guide in construing the instrument, there is no rule which requires courts to disregard all punctuation and look solely to the language of the instrument. *Harriss v. Ritter*, 154 Tex. 474, 279 S.W.2d 845, 847 (1955). Punctuation aids in construing the words used in the instrument. *Id.* A semicolon is used to mark a more important break in the sentence flow than that marked by a comma. THE CHICAGO MANUAL OF STYLE 147 (13th ed. 1982). "When items in a series are long and complex or involve internal punctuation, they should be separated by semicolons for the sake of clarity." *Id.* The language of the agreement sets out two methods of disposing of the center: first, "on a condominium basis;" or second, "as a whole project." Criswell's use of semicolons in drafting the agreement indicated that each phrase set off by a semicolon was to be read as having independent significance; that is, he used a semicolon to indicate that selling the property "as a whole project" was an alternate and independent means of disposing of the center. This becomes obvious when the language between the semicolons is deleted:

I will compile and prepare all information necessary for real estate agents to show and sell the above property *on a condominium basis* or *as a whole project.* (Emphases added.) In this case, the reasonable interpretation of the agreement is that the phrases "as a whole project" and "or entire project" were parallel expressions of alternate methods of selling the center and were not intended to explain or modify the phrase "on a condominium basis." As a result, we hold that the letter agreement did not require a sale of the shopping center "on a condominium basis" as a condition precedent to Criswell's right to receive compensation.

■ The agreement provides that Criswell "will compile and prepare all information necessary for real estate agents to show and *sell* the above property ..." and that Criswell will receive "a fee of one percent (1%) of the total *sales* price...." (emphases added). Crossroads argues that since the center was *transferred* by a "contract for deed," this does not constitute a *sale* and therefore Criswell was not entitled to payment. We disagree. *See Bucher v. Employers Casualty Co.*, 409 S.W.2d 583, 584 (Tex.Civ.App.—Fort Worth 1966, no writ) (contract of sale effects change of ownership wherein purchaser becomes equitable owner of the property while all that remains in seller is bare legal title, more in the nature of security to guarantee payment than anything else).

Black's Law Dictionary defines sale as a "contract between two parties ... by which the seller, in consideration of the payment or promise of payment of a certain price in money, *transfers* to the buyer the title and possession of the property." BLACK'S LAW DICTIONARY 1200 (5th ed. 1979) (emphasis added). Transfer is defined as the *"sale* and every other method ... of disposing of or parting with property...." *Id.* at 1342 (emphasis added). Even the most basic definitions make it clear that the terms sale and transfer are synonymous. As a result, we hold that the conveyance of the center was a "sale" as contemplated by the terms of the letter agreement.

However, Criswell did not ask this court to render judgment in his favor, but rather requested that the court remand to the trial court. Additionally, Crossroads pled several defenses which it claims it was unable to present to the jury in light of the directed verdict granted in its favor at the close of Criswell's case. Criswell's Motion to Modify Judgment, or in the alternative, for rehearing is overruled.

For these reasons, we reverse the judgments of the trial court and the court of appeals and remand to the trial court for further proceedings.

HECHT, J., concurs with an opinion.

GONZALEZ, J., dissents with an opinion joined by DOGGETT, J.

HECHT, Justice, concurring on Motion for Rehearing.

My concurring opinion of February 21, 1990, is withdrawn, and this opinion substituted.

I agree with the Court's result but wonder why it struggles so to reach it. The case is far simpler than the Court seems to think. The agreement between Criswell and European Crossroads, very simply, was that Criswell would prepare information to assist in the sale of European Crossroads' property, for which European Crossroads would pay a fee of 1% of the sale price of the property at closing. Criswell alleges that he performed—that he prepared the promised information—and that European Crossroads breached—that it refused to pay the promised fee. Thus Criswell contends that he is entitled to judgment.

European Crossroads' contention that it does not owe Criswell a fee because its property was not sold as a condominium simply has no basis in the agreement. European Crossroads' fee obligation was certainly not expressly conditioned on the sale of the property as a condominium, nor was any such condition implied, if indeed it legally could have been. Criswell agreed not only to prepare information for sale of the property specifically "on a condominium basis", but also to "prepare and have avail-

able any and all necessary information that a proposed owner or owners would deem pertinent or desirable and/or prepare the information that he may desire at his request." Thus Criswell agreed to provide information to assist any sale of the property, and if he performed that agreement, was entitled to be paid according to its terms.

Rules of construction may be necessary when the meaning of an agreement is ambiguous. This agreement is not ambiguous, and no party contends that it is. The Court's resort to rules of construction, even to the point of straining over the significance of a semicolon, is unnecessary and improper.

Accordingly, I join the Court only in its judgment.

GONZALEZ, Justice, concurring and dissenting on Motion for Rehearing.

My dissenting opinion of February 21, 1990 is withdrawn and the following is substituted.

While I agree with the court that the cause should be remanded for a new trial, I find it odd that all parties to this dispute, the trial court, the court of appeals, and this court agree that the contract in question is clear as a bell and yet disagree as to its meaning. I would hold that the contract is ambiguous as a matter of law. Thus, I would reverse the judgment of the court of appeals and remand this cause to the trial court for a trier of fact to determine the true intent of the parties.

Ginsberg and the partnership take the position that Criswell's engineering services were necessary only to create a condominium regime. According to the agreement, they contend Criswell was entitled to payment if and only if the center was sold on a condominium basis; since it was not, the partnership was not liable and did not pay Criswell.

Criswell contends that his services assisted the sale of the center and that under the agreement, it does not matter on what basis the center was sold. He brought this breach of contract suit, alleging that he was entitled to 1% of the sales price for services rendered and attorneys' fees.

The pertinent rules of construction are well settled and were set out in *Coker v. Coker*, 650 S.W.2d 391, 393–394 (Tex.1983):

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument.... Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. (citations omitted).

### AMBIGUITY

A contract is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker*, 650 S.W.2d at 393; *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979). The construction of an ambiguous contract is a question of fact. *See Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *Coker*, 650 S.W.2d at 394; *Harris*, 593 S.W.2d at 306. In the instant case, the agreement is ambiguous because it is just as fairly susceptible to the construction given by Crossroads as it is to that given it by Criswell.

The sentence in dispute reads: "I will compile and prepare all information necessary for real estate agents to show and sell the above property *on a condominium basis; i.e.,* to be able to sell each individual building (Building #1 through Building #9) as a separate item with necessary information to form an association to accommodate maintenance, taxes, necessary exterior utilities and any other community expenses; *or as a whole project.*" (emphasis added).

Criswell's reading of the contract, adopted by the court today, is reasonable. The agreement can fairly be read to mean that Criswell was to be paid whether the shopping complex was transferred as a number of separate units of a condominium project, or undivided "as a whole project." This reading of the contract is not, however, the only certain and definite interpretation available; therefore, the contract is ambiguous and rendition of judgment for Criswell is improper. *See Coker*, 650 S.W.2d at 393; *R & P Enter. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex.1980).

Crossroads' reading of the contract, adopted by both the trial court and the court of appeals, is also reasonable. The agreement can be read to mean that a sale of the shopping center on a condominium basis, either as individual buildings or as an entire condominium project, was required in order for Criswell to be entitled to payment.

The court relies upon the significance of the semicolons in the disputed sentence and upon the Chicago Manual of Style but overlooks pertinent law. A semicolon is a mark or point of grammatical punctuation, used for marking off a series of sentences or clauses of coordinate value, "or for the purpose of continuing the expression of a thought, and *never for introducing a new idea." Empire Ins. Co. v. Cooper*, 138 S.W.2d 159, 163–164 (Tex.Civ.App.—Amarillo 1940, writ dism'd) (emphasis added). Criswell wrote that the shopping center was to be sold "on a condominium basis; ...." Arguably, language following the semicolon—"as a whole project"—cannot introduce a new idea, but can only continue the expression that the project be sold on a condominium basis.

Arguments advanced by both parties are rational and both interpretations are reasonable. Thus, I am surprised that the court concludes that the contract is certain and reasonably susceptible to only one meaning.

I acknowledge that neither party has pleaded ambiguity. However, we have previously found ambiguity in agreements where it had not been pleaded. In *Coker v. Coker*, 650 S.W.2d 391, we were called upon to interpret the terms of a property settlement agreement incorporated into a divorce decree. As in this case, both parties contended that the agreement was unambiguous. Nevertheless, we held that the agreement was ambiguous and remanded the cause to the trial court so that the intent of the parties could be determined as a question of fact. In *White v. Moore*, 760 S.W.2d 242 (Tex.1988), we considered a provision in a will. Both parties agreed that the provision was unambiguous but attached conflicting interpretations to it. We concluded that the will was ambiguous and remanded the case for trial.

## CONDITIONS PRECEDENT

The court hinges its decision upon a discussion of conditions precedent and implicitly finds that there is no condition precedent but that there is a covenant. Not only is this incorrect, but the whole discussion is inconsequential to the resolution of this case. The letter agreement, according to *any* interpretation, contains a condition precedent. That is, the property had to be sold before Crossroads was obligated to pay Criswell.

Conditions precedent are those acts which must occur before there is a right to performance or before there is a breach of a contractual duty. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex.1976). Criswell was to be paid a fee of "one percent (1%) of the total sales price." So long as no sale occurred, Criswell had no right to demand payment from Crossroads. The dispute between Criswell and Crossroads centers not on the existence of the condition precedent—the sale—but rather on its terms—whether the sale had to be on a condominium basis.

The rules utilized by the court are inapplicable. For example, the court writes that "when a condition would impose an absurd or impossible result or result in forfeiture, an agreement will be interpreted as creating a *covenant rather than a condition*." (emphasis added). These rules and the others cited by the court are used

only to determine whether contractual provisions will be construed as conditions or covenants. They lose their force once it is established, as it is here, that a condition exists. The court's discussion of conditions precedent is therefore irrelevant.[1]

The contract is reasonably susceptible to more than one meaning. Thus, in my opinion, the trial court committed error in refusing to let the jury decide the true intent of the parties.

DOGGETT, J., joins this opinion.

---

1. The court also writes: "[A] term such as 'if', 'provided that', 'on condition that', or some other phrase of conditional language" must be included that makes performance specifically conditional. These or similar provisions, however, are not necessary and whether a contractual provision is a condition rather than a promise is determined from the whole instrument. *Schwarz-Jordan, Inc. v. Delisle Constr. Co.*, 569 S.W.2d 878, 881 (Tex.1978) (citations omitted). No magic terms were needed in this case; payment to Criswell was conditioned on a sale.