Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## MEMORANDUM OPINION

No. 04-11-00370-CV

**ARABELLA PETROLEUM COMPANY, LLC**,
Appellant/Cross-Appellee

v.

J.H. **BALDWIN**, Jr.,
Appellee/Cross-Appellant

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 09-587-B
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice

Delivered and Filed:  June 27, 2012

REVERSED AND RENDERED

Arabella Petroleum Company, LLC appeals the trial court's judgment awarding damages to J. H. Baldwin, Jr. for Arabella's breach of an agreement to pay Baldwin $126,625 for an oil and gas lease.  Arabella contends the agreement was unenforceable because: (1) the agreement lacked mutuality; (2) conditions precedent to the formation of the agreement were not satisfied; and (3) conditions precedent were not satisfied within the thirty-day period provided for their satisfaction.  We conclude that the agreement was unenforceable either because it lacked

mutuality or because a condition precedent to its formation was not satisfied. Accordingly, we reverse the trial court's judgment and render a take nothing judgment on Baldwin's breach of contract claim.[1]

## BACKGROUND

Arabella negotiated with Baldwin to acquire oil and gas leases on two tracts of land in Clay County, Texas (referred to herein as the North Tract and South Tract). During the negotiations, Baldwin informed Arabella that he owned only a 50% mineral interest in the tracts. Arabella subsequently prepared and sent Baldwin a separate Oil, Gas and Mineral Lease and Bank Draft for each tract. The executed leases and bank drafts were to be returned to Arabella's bank, Frost National Bank, to be held in escrow.

The bank draft stated, "Payable on approval of Agreement described hereon, and on approval of title to same by drawee not later than thirty (30) banking days after arrival of this draft at collecting bank." The bank draft further stated it was "subject alone to the acceptance of payment hereof by drawee, within said time." Finally, the bank draft stated, "In the event this draft is not paid within said time, the collecting bank shall return the same to forwarding bank and no liability for payment or otherwise shall be attached to any of the parties hereto."

On September 8, 2008, Baldwin signed the leases and bank drafts and took them to his bank to forward to Frost. On September 10, 2008, Frost notified Arabella that it received the documents. In conducting its due diligence, Arabella discovered that the owner of the other fifty percent of the mineral interest in the North Tract was unwilling to lease the interest to Arabella on terms that Arabella considered to be reasonable.

---

[1]Baldwin filed a cross-appeal challenging a damages offset, the trial court's failure to find alter ego, and the trial court's failure to award Baldwin trial attorney's fees. Because we render judgment in favor of Arabella, we need not address Baldwin's issues on cross-appeal. *See* TEX. R. APP. P. 47.1 (opinion need only address issues raised and necessary to final disposition of appeal).

On September 24, 2008, Arabella contacted Frost and instructed it to fund the South Tract bank draft. After funding the draft, Frost mistakenly sent Arabella the lease for the North Tract, not realizing it was the wrong lease, and Arabella recorded it on October 31, 2008.

Baldwin repeatedly contacted Arabella's landman and president asking about the funding on the bank draft for the North Tract. Arabella's president, Jason Hoisager, admitted receiving Baldwin's correspondence, but testified that he did not respond because Arabella's landman was responsible for communicating with the landowners. On December 5, 2008, Arabella instructed Frost to return the North Tract draft and lease as cancelled. When Frost returned the documents as cancelled, Frost discovered that it had mistakenly sent Arabella the North Tract lease. Arabella executed a release of the lease on January 15, 2009, immediately after Frost informed Arabella of the mistake. Arabella sent the executed release to Frost for filing; however, the release was not filed until July of 2009.

Baldwin sued Arabella for breach of contract. After a bench trial, the trial court ruled in Baldwin's favor. The trial court found that the lease and the draft reflected Arabella's agreement to pay Baldwin $126,625 for the North Tract lease. The trial court further found that the agreement did not fail for lack of consideration. Finally, the trial court found that the only condition precedent to the draft was Arabella's approval of Baldwin's title and that the provision in the draft stating that it was "subject alone to acceptance of payment hereof by drawee, within said time" was not a condition precedent. The trial court awarded Baldwin $126,625 in damages, but gave Arabella a credit for the $60,000 Frost paid to settle Baldwin's claims against it.

**MUTUALITY/CONSIDERATION**

"[A] contract must be based upon a valid consideration, and [] a contract in which there is no consideration moving from one party, or no obligation upon him, lacks mutuality, is unilateral, and unenforceable." *Tex. Gas Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex. 1970) (quoting *Texas Farm Bureau Cotton Ass'n v. Stovall*, 113 Tex. 273, 253 S.W. 1101 (1923)). "A contract will be construed in favor of mutuality." *Id*. "What constitutes consideration for a contract is a question of law." *Brownwood Ross Co. v. Maverick County*, 936 S.W.2d 42, 45 (Tex. App.—San Antonio 1996, writ denied).

Arabella contends the parties' agreement lacked mutuality based on the final clause in the draft which stated: "In the event this draft is not paid within said time, the collecting bank shall return the same to forwarding bank and no liability for payment or otherwise shall be attached to any of the parties hereto." Arabella relies on the Houston court's decision in *Spellman v. Lyons Petroleum, Inc.*, 709 S.W.2d 295 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), to support its contention.

In *Spellman*, Joe A. and Virginia L. Flosom executed an oil and gas lease which was accompanied by a bank draft as consideration for the lease. 709 S.W.2d at 296. On July 2, 1981, the lease and bank draft were deposited by the Flosoms with their bank to be forwarded to the appellant's bank. *Id*. On July 7, 1981, Joe called appellant and his bank and informed them that he wanted to cancel the lease. *Id*. On July 8, 1981, the draft was presented to the appellant's bank. *Id*. On July 10, 1981, appellant paid the draft and recorded the lease received from the bank upon payment of the draft. *Id*.

The final clause in the bank draft in *Spellman* is identical to the final clause of the bank draft in the instant case as quoted above. *See id*. at 297. The Houston court relied on one of its

earlier decisions to hold that the "no liability" clause caused the contract to fail for want of mutuality." *Id.* at 298 (citing *Sterling Computer Sys. of Tex., Inc. v. Texas Pipe Bending Co.*, 507 S.W.2d 282 (Tex. App.—Houston [14th Dist.] 1974, writ ref'd)). The court noted that the contract contained no requirement that the appellant make a reasonable effort to perform. *Id.* at 297. The court further noted that the appellant could certainly "have used the 'no liability' clause to his advantage had he chosen not to enforce the agreement." *Id.*

In the earlier decision relied on by the Houston court in *Spellman*, Sterling Computer Systems of Texas, Inc. entered into a contract with Texas Pipe Bending Company stating "that Texas Pipe Bending was to provide Sterling with digitized cards and computer programs each month, with which Sterling was to perform data processing services for Texas Pipe Bending." *Sterling Computer Sys. of Tex., Inc.*, 507 S.W.2d at 282. The contract quoted certain prices based on a minimum of 20,000 digitized cards per month. *Id.* The contract contained a one-year term; however, Texas Pipe Bending refused to provide Sterling with any digitized cards after eight months into the term of the contract. *Id.* After Sterling sued Texas Pipe Bending for breach of contract, Texas Pipe Bending moved for summary judgment arguing that the contract was unenforceable based on lack of mutuality. *Id.*

> The relevant portion of the contract on which Texas Pipe Bending relied provided:
>
> SCS (Sterling) shall not be liable for its failure to provide (sic) the services herein and shall not be liable for any losses resulting to the client (Texas Pipe Building) or anyone else by reason of such failure.

*Id.* The Houston court held the contract lacked mutuality because "[u]nder the express terms of the contract," "Sterling would not be liable for an outright refusal to perform the data processing services." *Id.* at 282-83. The court noted the contract contained "no requirement that Sterling

make a reasonable effort to perform. The exculpatory clause allowed Sterling to refuse to perform with impunity." *Id*. at 283.

The Eighth Circuit recently distinguished *Spellman*, asserting that the holding was limited to the enforceability of the draft and not the transaction as a whole. *Smith v. Arrington Oil & Gas, Inc.*, 664 F.3d 1208, 1214 (8th Cir. 2012). In that case, Arrington was an oil and gas production company, and its landman presented oil and gas leases to landowners. 664 F.3d at 1210. The lease recited consideration as including a cash bonus and royalties, and the lease provided that it was effective as of the execution of the lease by the lessor for a term of five years. *Id*. at 1211. The lease contained a signature block for only the lessor. *Id*. The landman delivered to the lessor a bank draft in exchange for receiving the signed lease. *Id*. The bank draft contained language which is identical to the language in the instant case, including the language requiring Arrington's approval of the lease and title and the "no liability" clause. *Id*.

Predicting how the Arkansas Supreme Court would decide the issue, the Eighth Circuit held that the no-liability clause did not negate the mutuality of obligation in the underlying lease agreements when construed in harmony with the terms of the lease agreements. *Id*. at 1213. The court noted, "Arrington's position that either party was free from obligation under the lease agreements unless and until Arrington paid the drafts is belied by the various terms in the lease agreements." *Id*. The lease agreements recited the cash bonus as consideration "in hand paid," the duration of the agreements ran from the date of execution, and the lessor's obligations, including the duty to warrant and defend title, ran from execution. *Id*. The court concluded, "Viewing the contract as a whole, these provisions indicate that a contract was formed when the landman accepted the lease agreements in exchange for the bank drafts." *Id*. at 1214.

The court then suggested a second reading of the no-liability clause that also would make the lease enforceable. *Id*. The court stated,

> The subject of the no-liability clause is "this draft" — that is, the draft, a particular instrument of payment, rather than the underlying contractual payment obligation. In other words, the exculpating power of the no-liability clause most naturally applies only to eliminating any potential liability created by return of the draft, something analogous to 'returned check" liability.

*Id*. The court further reasoned,

> The no-liability clause, like each of the other terms following the payment amount, relates to the negotiability of this particular instrument — the draft — and does not purport to negate underlying liability arising from the lease agreement. In short, construing the no-liability clause to exculpate only liabilities arising out of the return of the draft harmonizes the clause with the obligations and terms provided for in the lease agreement.

*Id*.

The court then distinguished *Spellman*, noting that the Houston court continued to discuss the enforceability of the lease itself after discussing the no-liability clause in relation to the enforceability of the bank draft. *Id*. The court noted that the Houston court rejected the argument that the lease was enforceable because the Flosoms had revoked their offer before the lease was delivered to the company. *Id*. The court reasoned, "If the no-liability clause on the draft had been sufficient to void the related lease agreement, then the court in *Spellman* would have had no need to discuss whether the lessors canceled the lease prior to tendering the lease." *Id*.

Although facially appealing, we must disagree with the Eighth Circuit's logic for several reasons. First, the Texas Supreme Court has instructed us that we must construe the lease and the draft together, not as independent documents. *Sun Exp. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987). In addition, because the draft provides conditions precedent to the formation of the parties' overall agreement and given that the "no liability" clause states liability shall not

attach to any party for "payment or otherwise," viewing the obligations under the draft independent of the lease also appears to be contrary to the contractual language. Furthermore, the draft expressly states that it is drawn "to pay for Oil and Gas Lease dated July 23rd, 2008, and covering" Baldwin's interest in the North Tract. Accordingly, to construe the language in the lease as providing consideration independent of the draft is problematic. Moreover, the Eighth Circuit's effort to distinguish *Spellman* appears to be based on a misreading of the opinion since the Houston court clearly held that the "contract" failed for want of mutuality, not that the "draft" failed for want of mutuality. *Spellman*, 709 S.W.2d at 298. Finally, it is important to note that in the absence of a contractual requirement that a party make a reasonable effort to perform, Texas law will not imply such a requirement because Texas law does not impose a general duty of good faith and fair dealing in contracts, including oil and gas leases. *See City of Midland v. O'Bryant*, 18 S.W.3d 209, 215 (Tex. 2000); *Green v. Gemini Exp. Co.*, No. 03-02-00334-CV, 2003 WL 1986859, *3 (Tex. App.—Austin May 1, 2003, pet. denied) (mem. op.); *Prairie Producing Co. v. Angelina Hardwood Lumber Co.*, 882 S.W.2d 640, 645 (Tex. App.—Beaumont 1994, writ denied). Had the draft or the lease contractually imposed such a good faith or reasonable efforts requirement, the outcome of this case might be different. *See Geophysical Micro Computer Applications (Int'l) Ltd. v. Paradigm Geophysical Ltd.*, No. 05-98-021016-CV, 2001 WL 1270795, at *6 (Tex. App.—Dallas Oct. 24, 2001, pet. denied) (noting exculpatory clauses conditioned on "good faith" or "reasonable efforts" do not fail for want of mutuality).

Construing the draft and the lease together as instructed by the Texas Supreme Court, we conclude the "no liability" clause is an exculpatory clause that causes the parties' agreement to fail for lack of mutuality. We note that if Arabella had paid the draft, lack of mutuality would no longer be a defense to the enforceability of the lease. As the Texas Supreme Court has long

recognized: "The test for mutuality is to be applied, not as of the time when the promises are made, but as of the time when one or the other is sought to be enforced." *Hutchings v. Slemons*, 174 S.W.2d 487, 489 (Tex. 1943). As further explained:

> Though a contract be void for lack of mutuality at the time it is made, and while it remains wholly executory, yet, when there has been even a part performance by the party seeking to enforce the same, and in such part performance such party has rendered services or incurred expense contemplated by the parties at the time such contract was made, which confers even a remote benefit on the other party thereto, such benefit will constitute an equitable consideration, and render the entire contract valid and enforceable.

*Id.* (quoting *Big Four Ice & Cold Storage Co. v. Williams*, 9 S.W.2d 177, 178 (Tex. Civ. App.—Waco 1928, writ ref'd)); *see also Tex. All Risk Gen. Agency, Inc. v. Apex Lloyds Ins. Co.*, No. 10-10-00017-CV, 2010 WL 4572738, at 5 (Tex. App.—Waco 2010, no pet.) (holding that agreement did not fail for lack of mutuality where parties performed pursuant to the agreement). Thus, "[a] promise may be unenforceable for want of mutuality when made, and yet the promisee may render it valid and binding by supplying a consideration on his part before the promise is withdrawn." *Big Four Ice & Cold Storage Co.*, 9 S.W.2d at 178.

## CONDITION PRECEDENT

Even assuming that this court is incorrect in holding the parties' agreement failed for lack of mutuality, Arabella also argues that no binding contract was formed because the conditions precedent to its formation were never satisfied, much less within the requisite thirty-day time period. In addition to arguing that Arabella's approval of the oil and gas lease and its approval of title were conditions precedent to the formation of a binding contract, Arabella contends the following language in the draft made funding the draft a condition precedent to the enforceability of the lease:

> The drawer, payee and endorsers hereof, and the grantors of the Oil and Gas Lease described hereon, do hereby constitute and appoint the collecting bank

> escrow agent to hold this draft for the time specified above, ***subject alone to the acceptance of the payment hereof by drawee, within said time***, and without any right of the drawer, payee or endorser hereof, or said grantors, to recall or demand the return of this draft prior to the expiration of the above specified time, and there shall be no liability whatsoever on the collecting bank for refusal to return the same prior to such expiration.

(emphasis added).

The determination of whether language in an agreement constitutes a condition precedent is a matter of contract construction. *Progressive County Mut. Ins. Co. v. Trevino*, 202 S.W.3d 811, 814 (Tex. App.—San Antonio 2006, pet. denied); *Walden v. Affiliated Computer Servs., Inc.*, 97 S.W.3d 303, 326 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). When a contract is not ambiguous, the construction of the written instrument is a question of law for the court which is reviewed *de novo*. *MCI Telecomm. Corp. v. Texas Utils. Elec. Co.*, 995 S.W.2d 647, 650-51 (Tex. 1999); *Progressive County Mut. Ins. Co.*, 202 S.W.3d at 814.

"'In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract.'" *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 109 (Tex. 2010) (quoting *Criswell v. European Crossroads Shopping Ctr, Inc.*, 792 S.W.2d 945, 948 (Tex. 1990)). "'In order to make performance specifically conditional, a term such as "if," "provided that," "on condition that," or some similar phrase of conditional language must normally be included.'" *Id*. "'While there is no requirement that such phrases be utilized, their absence is probative of the parties' intention that a promise be made, rather than a condition imposed.'" *Id*. "When no conditional language is used and another reasonable interpretation of the contract is possible, 'the terms will be construed as a covenant in order to prevent a forfeiture.'" *Id*. We note the phrase "subject alone to" is similar to the phrases the Texas Supreme Court has expressly held to be phrases of conditional language. *Id*.

In *Shannon v. Barbee*, the Waco court considered the effect of identical language in a transaction similar to the one presented in the instant case. No. 10-06-00414-CV, 2008 WL 802266 (Tex. App.—Waco Mar. 26, 2008, pet. denied) (mem. op.). In that case, the Shannons executed an oil and gas lease and received bank drafts in return. *Id*. at *1. Each draft stated that it was conditioned on approval of the lease and approval of title and contained the "subject alone to" language identical to the language quoted above from the draft in the instant case. *Id*. The Waco court held that the provisions in the draft "plainly contained conditions precedent to the formation of an oil and gas lease," including thirty banking days for payment of the drafts. *Id*. at *4. The issue presented was "whether the Shannons extended the time period (thirty banking days) in which the conditions precedent were to be performed." *Id*. The Waco court held that the evidence was sufficient to show that the Shannons agreed to extend the time period and that Barbee paid the drafts within the extended time period. *Id*. at *5-6. Accordingly, the Waco court affirmed the trial court's judgment declaring the oil and gas lease effective. *Id*. at *1.

We agree with the Waco court that the phrase "subject alone to the acceptance of payment hereof by drawee, within said time" made the funding of the draft within the thirty days a condition precedent to the formation of a contract between the parties in the instant case. That the condition precedent in the instant case extended to the enforceability of both the draft and the lease is evidenced by the paragraph's reference to both the "drawer" and the "grantors of the Oil and Gas Lease described hereon." Because Arabella did not accept payment of the draft by funding it within the requisite time period, this condition precedent was not met; therefore, the oil and gas lease was not enforceable.

## CONCLUSION

We conclude that either the parties' agreement failed for want of mutuality, or no agreement was formed because a condition precedent was unsatisfied. In either event, the trial court erred in awarding Baldwin damages for breach of agreement. Accordingly, we reverse the trial court's judgment and render judgment that Baldwin take nothing on his breach of contract claim against Arabella.

Catherine Stone, Chief Justice