**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2014-77

UNITED STATES TAX COURT

MICHAEL S. JEFFERS AND DEBBIE L. JEFFERS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1234-12S.                    Filed August 13, 2014.

Michelle L. Drumbl and George Robertson (student), for petitioners.

Timothy B. Heavner and Matthew S. Reddington, for respondent.


SUMMARY OPINION

GOEKE, Judge:  This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code in effect when the petition was filed.

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect for the year at issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a $6,896 deficiency in petitioners' income tax and a $1,379.20 section 6662(a) accuracy-related penalty for 2009, resulting from his disallowance of the first-time homebuyer credit under section 36 that petitioners claimed on their 2009 Form 1040, U.S. Individual Income Tax Return. After concessions[2] the sole issue for decision is whether petitioners are entitled to the first-time homebuyer credit they claimed for 2009. We hold that they are not.

## Background

Some of the facts have been stipulated and are so found. Petitioners resided in Virginia when they filed their petition.

In 1993 petitioners moved from Virginia Beach, Virginia, to Rocky Mount, Virginia, when they were experiencing financial difficulties and needed affordable housing. After reading about a house for sale in the local newspaper, petitioners contacted the seller, Georgia Ferguson. Ms. Ferguson offered to finance the sale with petitioners making monthly payments of principal and interest for 15 years and taking title in 2008. The agreement appealed to petitioners because it allowed

---

[2]Respondent has conceded that petitioners are not liable for the accuracy-related penalty.

them to obtain legal title to the property relatively inexpensively without seeking financing from a third party. On March 15, 1993, petitioners entered into a real estate contract entitled "Installment Land Sale Contract".

The purchase price was $68,500, and petitioners made an initial downpayment of $10,000. The contract called for monthly payments of $645.40, which covered principal, interest, and petitioners' share of the property tax and homeowners insurance.[3] In the event of fire or other casualty, petitioners were required to continue making the payments, even if insurance proceeds were insufficient to repair or rebuild the home.

Of the $645.40, $610.89 was for principal and interest and the remainder was allocated between tax and homeowners insurance. Petitioners remitted these tax and insurance payments to Ms. Ferguson, who paid the taxes and the insurance premiums. Petitioners' tax and insurance payments were subject to change if these expenses ever increased.

The contract required petitioners, before taking possession, to refinish the hardwood floors, recarpet some of the bedrooms, and renovate the main bathroom.

---

[3]The contract required petitioners to pay one-twelfth of the annual property tax and insurance premiums. Petitioners paid one-twelfth of that obligation each month.

Petitioners could not make any other changes to the property without Ms. Ferguson's permission.

Ms. Ferguson restricted petitioners' use of the property during the contract term. Petitioners could not lease the property or have anyone but immediate family reside in the home; Ms. Ferguson even refused to let Mrs. Jeffers' dying mother live in the home during her last months of life. Moreover, petitioners' three children were required to move out of the home as soon as they reached age 18 or graduated from high school. Ms. Ferguson also forbade smoking on the property, and consequently Mr. Jeffers had to smoke across the street. Ms. Ferguson would enter petitioners' home as she pleased and often parked her car across the street and watched their home for hours. Petitioners considered taking legal action against Ms. Ferguson but decided not to because they could not afford an attorney. Because of Ms. Ferguson's actions and the restrictions under the contract, petitioners believed that the contract operated as a lease rather than as a sale. Accordingly, during the term of the contract petitioners did not claim deductions for mortgage interest or property tax on their income tax returns.

In December 2008 petitioners made their final payment, which should have allowed them to take legal title to the property. However, Ms. Ferguson was on an extended vacation and did not transfer legal title until February 2009. Petitioners

believe they acquired ownership of the property in 2009 when they received legal title.

Petitioners researched the first-time homebuyer credit and determined that, because they received legal title to the property in 2009, they qualified. Accordingly, they claimed the credit on their 2009 return. Respondent denied the credit and determined a $6,896 income tax deficiency. Petitioners timely petitioned this Court to review the deficiency determination.

## Discussion

### I. Burden of Proof

The taxpayer generally bears the burden of proving the Commissioner's determinations are erroneous. Rule 142(a). The burden of proof may shift to the Commissioner if the taxpayer satisfies certain conditions. Sec. 7491(a). We base our resolution of this case on a preponderance of the evidence, not on an allocation of the burden of proof. Therefore, we need not consider whether section 7491(a) would apply. See Estate of Bongard v. Commissioner, 124 T.C. 95, 111 (2005).

### II. First-Time Homebuyer Credit

As pertinent here, section 36 provides a refundable tax credit to some individuals who purchased homes between April 9, 2008, and December 1, 2009.

To qualify for the credit the taxpayer must have purchased the home within the requisite period and must not have had an ownership interest in a principal residence within the three years preceding the purchase. See sec. 36(c)(1), (h).

To evaluate petitioners' eligibility for the credit, we must determine whether they purchased the home within the requisite period and, if so, whether they had an ownership interest in a principal residence during the three years preceding the purchase. Petitioners argue that they purchased the home in 2009 when they received title and that they did not have an ownership interest in it until that time. Respondent argues that petitioners purchased the home in 1993 when they entered into the installment sale contract. We address the parties' arguments below.

III. Purchase Date

This is not the first time we have had to determine for purposes of the first-time homebuyer credit the purchase date of a home acquired under an installment sale contract. In Woods v. Commissioner, 137 T.C. 159, 162 (2011) (citing United States v. Nat'l Bank of Commerce, 472 U.S. 713, 722 (1985)), we held that in such cases, the purchase date is the date on which the taxpayer obtained equitable title (i.e. the benefits and burdens of ownership) to the property under State law. The home at issue in Woods was in Texas; we determined that under Texas law, the taxpayer had obtained equitable title on the contract date. Id. at

163 (citing <u>Criswell v. European Crossroads Shopping Ctr., Ltd.</u>, 792 S.W.2d 945 (Tex. 1990)). We accordingly held that the taxpayer had purchased his home on the day he entered into his installment sale contract. <u>Id.</u>

Virginia courts have determined that a purchaser of real property generally acquires equitable title to such property upon entering a contract for its purchase. <u>Sale v. Swann</u>, 120 S.E. 870, 873 (Va. 1924). To our knowledge, the Virginia Supreme Court has not addressed the applicability of this principle to installment sale contracts. However, other courts applying Virginia law have found that this principle extends to installment sale contracts. <u>See</u> <u>In re Griffin</u>, 397 B.R. 356, 360 (W.D. Va. 2008); <u>Douglas v. HKA</u>, 32 Va. Cir. 178, 185-186 (Cir. Ct. 1993). We agree; the Virginia Supreme Court's willingness to find equitable ownership based solely on an executory contract leads us to believe that it would find equitable ownership on the contract date here. In 1993 petitioners had not only an executory contract for the purchase of their home, but also several other incidents of ownership: they had possession of the property, they bore the risk of loss, and they were obligated to make property tax and insurance payments.

In other contexts we have said that a sale of real property is complete upon the earlier of the passage of legal title or the buyer's assumption of the benefits and burdens of ownership. <u>Keith v. Commissioner</u>, 115 T.C. 605, 611 (2000);

Baird v. Commissioner, 68 T.C. 115, 124 (1977). We have identified seven benefits and burdens associated with ownership: (1) a right to possession; (2) an obligation to pay taxes, assessments, and charges against the property; (3) a responsibility for insuring the property; (4) a duty to maintain the property; (5) a right to improve the property without the seller's consent; (6) a bearing of the risk of loss; and (7) and a right to obtain legal title at any time by paying the balance of the full purchase price. Woods v. Commissioner, 137 T.C. 159; Keith v. Commissioner, 115 T.C. at 611. No single benefit or burden is controlling. Baird v. Commissioner, 68 T.C. at 124.

Petitioners argue that Ms. Ferguson's absolute control over the property during the term of the contract prevented them from possessing the benefits and burdens of ownership until they received legal title in 2009. Respondent argues that the benefits and burdens of ownership shifted in 1993 when petitioners entered into the installment sale contract. We will analyze each of the factors below to determine when petitioners acquired the benefits and burdens of ownership according to the factors enumerated above.

A. Right to Possession

The parties agree that petitioners had the right to possess the property during the life of the contract. The contract stipulated that petitioners would

obtain the right of possession after they refinished the hardwood floors, recarpeted some of the bedrooms, and renovated the main bathroom. Petitioners completed those tasks in 1993 and acquired possession at that time.

    B. <u>Obligation To Pay Property Taxes, Assessments and Charges Against the Property</u>

The contract required petitioners to pay one-twelfth of the annual property tax. A portion of each of petitioners' monthly payments went toward their portion of the property tax liability. Petitioners argue that their obligation to pay a portion of the property tax did not represent a burden of ownership, because Ms. Ferguson was ultimately responsible for paying the tax. We find petitioners' argument unpersuasive. Petitioners were obligated to make monthly property tax payments; Ms. Ferguson simply turned their payments over to the taxing authority each year. The obligation to pay property tax is a burden of ownership, and petitioners assumed it in 1993.

    C. <u>Responsibility To Insure the Property</u>

The contract also required petitioners to pay one-twelfth of the annual property insurance premiums. A portion of each monthly payment went toward this obligation. Ms. Ferguson collected the payments from petitioners each month and made the annual premium payments.

Petitioners argue that their obligation to pay a portion of the insurance expenses did not represent a burden of ownership, because Ms. Ferguson was ultimately responsible for paying the premiums. This is the same argument they make regarding their property tax obligation, and it fails for the same reason. Although Ms. Ferguson paid the annual premiums, petitioners still had to pay their share. Paying for insurance on property is a burden of ownership, and petitioners assumed that burden in 1993, when they entered into the installment sale contract.

### D. Duty To Maintain the Property

The contract did not assign the duty to maintain the property, but as a practical matter petitioners assumed it when they took possession of the house. Ms. Ferguson refused to make any repairs, even those that were necessary to keep the home habitable. For example, when the house's boiler broke, Ms. Ferguson declined to fix it and told petitioners it was their responsibility to ensure the home was heated. Petitioners also maintained the property's lawn and landscaping during the term of the contract. Petitioners argue that they were not obligated to perform maintenance but had other motives for maintaining the yard. Petitioners owned a landscaping business and believed that a well-maintained yard was important to their business reputation.

We think that maintaining one's property, even in the absence of a contractual duty to do so, is indicative of ownership. Like most homeowners, petitioners maintained their home because they saw it as an investment and planned to live there long term. On these facts, we find that petitioners assumed the burden of maintenance in 1993 when they took possession of the property.

### E. Right To Improve the Property Without the Seller's Consent

The parties agree that under the terms of the contract petitioners had no right to improve the property without Ms. Ferguson's consent. The contract stipulated that petitioners had to obtain Ms. Ferguson's permission any time they wanted to make even a minor change to the property. Thus, petitioners did not acquire this benefit of ownership until they received title to the property in 2009.

### F. Risk of Loss

The contract allocated the risk of loss to petitioners; petitioners would have had to continue making monthly payments even if the house had been destroyed. Petitioners concede that they assumed the risk of loss on the property in 1993 when they agreed to the installment sale contract.

### G. Right to Legal Title Upon Payment of Purchase Price

Petitioners had the right to demand title from Ms. Ferguson upon payment of the full purchase price. The contract required Ms. Ferguson to deliver the deed

within 10 days of full payment, and petitioners could pay the remaining balance at any time without penalty. Therefore, petitioners obtained this benefit of ownership when they entered into the contract in 1993.

Our analysis of these factors demonstrates that petitioners acquired an equitable interest in the property in 1993. Although some of the benefits and burdens did not shift until later, those that shifted in 1993 were significant enough to give petitioners an ownership interest at that time.

## IV. Conclusion

We hold that petitioners had an ownership interest in the property beginning in 1993. Because they did not purchase it between April 9, 2008, and December 1, 2009, they are not entitled to the first-time homebuyer credit. Holding otherwise would be inconsistent with precedent in this Court and would not serve the purpose of the credit, which Congress created to stimulate the housing market during a period of recession. Congress intended to encourage new home purchases, not to reward taxpayers like petitioners, who were engaged in an installment land sale that fortuitously concluded within the statutory period.

In reaching our holdings herein, we have considered all arguments the parties made, and, to the extent we did not mention them above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency under section 36 and for petitioners as to the accuracy-related penalty under section 6662(a).