

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00060-CV

———————————————————

IN THE INTEREST OF C.H., A CHILD

On Appeal from the 467th District Court
Denton County, Texas
Trial Court No. 22-6370-467

Before Bassel, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

Appellant R.H. (Father) appeals the trial court's judgment ordering him to pay Appellee Y.M. (Mother) $30,181.00 in unreimbursed medical expenses. In his only issue, Father argues that the trial court abused its discretion because Mother did not prove that she had sent him the court-ordered notice of the expenses that she had incurred. Because we determine that the trial court did not abuse its discretion, we affirm its order.

### II. BACKGROUND

The subject child, C.H., was born in 2021. Father and Mother both signed an acknowledgment of paternity, *see* Tex. Fam. Code Ann. §§ 160.301, 160.302(a), declaring that Father is C.H.'s biological father.

In 2023, Mother filed a suit affecting the parent–child relationship. In her original petition, Mother stated her belief "that the parties w[ould] enter into a written agreement containing provisions for support of the child." Months later, Mother and Father entered into a Mediated Settlement Agreement (MSA), and the trial court signed an Agreed Order. As pertinent to this appeal, the Agreed Order

- required Mother to furnish to Father, "no later than August 22, 2023, . . . all receipts, bills, statements, and explanations of benefits reflecting the unreimbursed portion of the health-care expenses for prenatal and postnatal health[-]care expenses for [Mother] and [C.H.] incurred by" Mother;

- required Father to "pay fifty percent (50%) of all prenatal and postnatal health-care expenses of" Mother and C.H.; and

2

- required both parents to obtain and maintain a subscription to an Internet program called AppClose and "solely communicate through the AppClose program with regard to all communication regarding [C.H.], except in the case of an emergency."

In 2024, Mother filed a motion for enforcement, alleging thirty-five violations of the Agreed Order by Father. Twenty-five of the alleged violations had to do with Father's obligation to pay 50% of Mother's and C.H.'s prenatal and postnatal health-care expenses. The other ten alleged violations are not at issue in this appeal.

The trial court held a hearing on Mother's motion. At the hearing, Mother testified that she had provided Father with bills for her prenatal and postnatal health care but that he had not paid his 50% share. She testified to the exact amount of each bill and stated that she had served Father with all of the bills on August 21, 2023, after having already provided him copies of all but one of the bills on June 23, 2023.[1] She offered as evidence a letter from her attorney to Father's attorney and an electronically generated Notification of Service showing that the "Letter for Reimbursement of Pre[n]atal and Post[n]atal Medical Expenses" was served on Father's attorney via email on August 21, 2023. The letter stated that "the bills and receipts attached evidence the following medical expenses" and included an itemized list of health-care expenses, identifying the providers, the dates of service, and the "out-of[-]pocket" amounts paid by Mother. Both the letter and Notification of

---

[1]Mother testified that she had provided Father with a $1,500.00 bill for genetics testing on January 27, 2021—the date it was incurred.

Service were admitted over Father's objection. The letter calculated the total out-of-pocket amount that Mother had paid as $60,362.16 and requested that Father "make payment within sixty (60) days in the amount of $30,181.08, representing fifty percent of [Mother]'s out-of-pocket pre[]natal and post[]natal medical expenses." However, the bills and receipts themselves were not offered or admitted into evidence.

After testifying, Mother called Father as a witness. Father admitted that he did not pay 50% of the prenatal and postnatal health-care expenses but testified that he had "never received" the bills. He claimed that "[t]he first time" he saw the prenatal and postnatal health-care bills was the day of the hearing.

After the hearing, the trial court signed an order granting Mother "a cumulative judgment for unreimbursed medical expenses, including accrued interest, against [Father] of thirty thousand one hundred eighty-one dollars and zero cents ($30,181.00)."[2] Father timely appealed.[3]

---

[2]In the same order, the trial court also awarded Mother's attorney $3,000.00 in attorney's fees.

[3]It appears that, although Father also filed a timely "Request for Findings of Fact and Conclusions of Law," *see* Tex. R. Civ. P. 296, no findings of fact and conclusions of law appear in the record. But because Father did not file a "Notice of Past Due Findings of Fact and Conclusions of Law," *see* Tex. R. Civ. P. 297, he cannot complain on appeal about the trial court's failure to file them. *See Wal-Mart Stores, Inc. v. Kelley*, 103 S.W.3d 642, 645 (Tex. App.—Fort Worth 2003, no pet.); *see also Jimenez v. McGeary*, 542 S.W.3d 810, 812 (Tex. App.—Fort Worth 2018, pet. denied) ("[B]ecause the [appellants] did not file the necessary follow-up notice of past-due findings, they waived their right to complain on appeal about the lack of findings and conclusions.").

## III.  DISCUSSION

In his sole issue, Father argues that the trial court abused its discretion by granting Mother's motion for enforcement.[4]  Central to Father's argument is the premise that his duty to pay 50% of Mother's and C.H.'s unreimbursed prenatal and postnatal health-care expenses was conditioned on Mother's providing him notice of the expenses incurred.  Father relies on the following provision in the Agreed Order:

> IT IS THEREFORE ORDERED that [Father] shall pay fifty percent (50%) of all prenatal and postnatal health-care expenses of [Mother] and the child, [C.H.,] as follows:
>
> IT IS ORDERED that [Mother] shall no later than August 22, 2023, furnish to [Father] all receipts, bills, statements, and explanations of benefits reflecting the unreimbursed portion of the health-care expenses for prenatal and postnatal health[-]care expenses for [Mother] and [C.H.] incurred by [Mother].  IT IS ORDERED that [Father] shall pay fifty percent (50%) of all unreimbursed health-care expenses for prenatal and postnatal health-care expense to [Mother].

Father interprets this to mean that Mother was "only entitled to reimbursement of prenatal expenses if she had delivered the necessary documentation to" Father.  He contends that Mother "did not present evidence to show that she [had] complied with the order in tendering to [Father the] necessary documentation as required" by the Agreed Order and that, therefore, the evidence was insufficient to support Mother's

---

[4]As we will detail below, the trial court did not grant Mother all the relief that she had requested in her motion for enforcement, but Mother does not argue that the trial court erred in that regard or that the evidence is insufficient to support its judgment.  Mother also did not file her own notice of appeal seeking to alter the trial court's judgment.  *See* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable order must file a notice of appeal.").

claim that Father was not in compliance with the order. Applying the appropriate standard of review, we reject Father's appellate contentions.

## A. Standard of Review

When reviewing a trial court's family-law decision for an abuse of discretion, legal and factual insufficiency are not independent reversible grounds of error but are relevant factors. *In re C.F.*, 576 S.W.3d 761, 773 (Tex. App.—Fort Worth 2019, no pet.). In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we engage in a two-pronged inquiry: (1) did the trial court have enough information upon which to exercise its discretion; and (2) did the trial court err in applying its discretion? *Id.* The applicable sufficiency review comes into play in answering the first prong. *Id.* Concerning the second prong of our abuse-of-discretion inquiry, we resolve, based on the elicited evidence, whether the trial court's decision was reasonable. *Id.* A trial court does not abuse its discretion by basing its decision on conflicting evidence if some evidence supports its decision. *In re J.R.*, No. 02-23-00071-CV, 2024 WL 191211, at *4 (Tex. App.—Fort Worth Jan. 18, 2024, pet. denied) (mem. op.); *see Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009).

## B. Applicable Law

"The movant on a motion to enforce a child-support order, including an order to provide medical support, has the burden of establishing the amount of support owed." *C.F.*, 576 S.W.3d at 773; *see* Tex. Fam. Code Ann. § 154.183(c)(1) (stating that

6

unreimbursed medical expenses not covered by insurance or included in cash medical support are allocated as additional child support); *see also In re N.K.C.*, No. 05-20-00333-CV, 2022 WL 278968, at *3 (Tex. App.—Dallas Jan. 31, 2022, no pet.) (mem. op.) ("Medical support for a child is a child[-]support obligation."). When interpreting an agreed order, we interpret the order as a contract between the parties and apply the general rules of contract construction. *In re K.M.J.*, No. 02-09-00303-CV, 2011 WL 3525439, at *2 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op.).

A "condition precedent" is an event that must happen or be performed before a right can accrue to enforce an obligation. *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (quoting *Centex Corp. v. Dalton,* 840 S.W.2d 952, 956 (Tex. 1992)). In order to make performance specifically conditional, a term such as "if," "provided that," "on condition that," or some similar phrase of conditional language must normally be included. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990). While there is no requirement that such phrases be utilized, their absence is probative of the parties' intention that a promise be made, rather than a condition imposed. *Id.* And if no such language is used, then the terms will be construed as a covenant. *Id.* A covenant, as distinguished from a condition precedent, is an agreement to act or refrain from acting in a certain way. *Lucas v. Coomer*, No. 02-09-00152-CV, 2010 WL 5118023, at *5 (Tex. App.—Fort Worth Dec. 16, 2010, no pet.) (mem. op.).

**C. Analysis**

Applying these rules to the language at issue in the Agreed Order, we conclude that Mother's obligation to furnish Father with the documentation of her unreimbursed prenatal and postnatal health-care expenses was not a condition precedent triggering Father's obligation to pay his share of those expenses. The paragraph imposing these obligations on the parties does not contain any conditional language such as "if," "provided that," or "on condition that." *See Solar Applications*, 327 S.W.3d at 112 (interpreting the lien-release provision in a contract to be a covenant "absent clear language that a lien release is a condition precedent to a general contractor['s] performing under the contract and receiving the contract balanced owed to it"); *Lucas*, 2010 WL 5118023, at *5–6 (holding that lease provision that did not contain conditional language such as "if," "provided that," or "on condition that" did not set forth conditions precedent to validity of lease). Rather, the parties made covenants with each other: Mother agreed to provide Father with the requisite documentation showing her and C.H.'s unreimbursed prenatal and postnatal health-care expenses, and Father agreed to pay 50% of all those unreimbursed expenses. One was not conditioned on the other.[5] We therefore reject Father's

---

[5]We note that the provision in the MSA setting forth the cost sharing of prenatal and postnatal health-care expenses also conspicuously lacks any conditional language:

Father shall also pay the following:

8

contention that his "obligation to pay did not start unless [Mother] sent the necessary documentation to" him.[6] *See McCain v. McCain*, 636 S.W.3d 679, 687–88 (Tex. App.—Austin 2021, no pet.) (rejecting father's appellate contentions that similar provision's requirement—that mother provide him documentation of any health-care expenses that she incurred within thirty days of her receipt of such documentation—functioned as a "condition precedent" and that, because she did not comply, his obligation to reimburse her never arose where provision contained no conditional language).[7]

Having concluded that Father's duty to pay 50% of the unreimbursed prenatal and postnatal health-care expenses was not conditioned on Mother's performing her obligation to furnish Father with documentation of the expenses, we turn to whether the trial court abused its discretion. We determine that it did not.

---

. . . .

> d. Reimburse Mother for 50% of the Pre-post natal [sic] expenses for [Mother's] medical bills associated with birth of [C.H.] - Mother shall provide proof of said expenses incurred and her payment of same to Father [w]ithin 60 days of date of MSA.

[6]Because we reach this conclusion, we need not address Father's contention that proof of service on Father's attorneys was insufficient to establish that Mother had furnished Father himself with the documentation of her and C.H.'s prenatal and postnatal health-care expenses. *See* Tex. R. App. P. 47.1.

[7]Like our sister court in *McCain*, we add that Father's position "is at odds with the overarching policy in family law that each parent is obligated to support his or her child during the child's minority and is liable to any other person, including the other parent, who provides necessaries for that child." 636 S.W.3d at 688 (collecting cases).

Mother and Father both testified at the hearing that Father did not pay his 50% share of the prenatal and postnatal health-care expenses. Mother testified that, on August 21, 2023, she had served Father with all of the bills for her prenatal and postnatal health-care expenses as required by the Agreed Order. She identified the Notification of Service dated August 21, 2023, that her attorney had provided to her as proof of service. She testified to each expense listed in the letter from her attorney to Father's attorney and further testified that Father did not pay the $31,671.08 that he owed her for prenatal and postnatal health care. And, finally, she testified that Father made enough money to cover these expenses.[8]

Father testified that he "fully understood" the MSA when he signed it. He also admitted that he was aware that there were prenatal and postnatal health-care bills that were due and that he had agreed to pay half of them but did not. And he did not contest his obligation under the Agreed Order to pay 50% of Mother's and C.H.'s unreimbursed prenatal and postnatal health-care expenses. He did not even contest the amount of prenatal and postnatal health-care expenses that Mother claimed she had incurred.[9] We hold that the trial court had enough information upon which to

[8]Father did not contest this fact although he testified that he and Mother "would make out a payment plan, $50, $100 a month."

[9]Father contested other facts, including whether Mother had sent him the bills for her prenatal and postnatal health-care expenses. And Mother equivocated on whether she had sent Father the prenatal and postnatal healthcare receipts through AppClose, first testifying that she had sent the receipts to Father through AppClose on June 23, 2023, and then later testifying that she had sent him "[t]he unreimbursed

exercise its discretion and did not err by applying its discretion and ordering Father to pay $30,181.00 in unreimbursed health-care expenses.[10]  Accordingly, we overrule Father's one issue.

## IV. CONCLUSION

Having overruled Father's sole issue, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: March 26, 2026

---

medical expenses . . . via the app, AppClose," but that the "pre[natal] and postnatal expenses were sent separately."  Because the factfinder is the sole arbiter of the witnesses' credibility and demeanor, our appellate review must defer to the trial court's factual determinations.  *In re J.F.-G.*, 627 S.W.3d 304, 311–12 (Tex. 2021); *see also McCain v. McCain*, 980 S.W.2d 800, 802 (Tex. App.—Fort Worth 1998, no pet.) ("The trial court is the sole judge of the credibility of witnesses and may decide whether to believe a particular witness.").

[10]We recognize that this is not the full amount that Mother pleaded for in her motion for enforcement or even the total amount of prenatal and postnatal health-care expenses that she testified she had incurred.  Nevertheless, Mother does not argue on appeal that the trial court erred or that the evidence is insufficient to support the arrearage amount that it awarded her.  Because some evidence supports the trial court's ruling, we will not disturb it.  *See C.F.*, 576 S.W.3d at 774–75 (stating that "the trial court as factfinder could choose to believe all, some, or none of the evidence" and holding that the trial court did not abuse its discretion when one parent's testimony supported the arrearage amount that the trial court confirmed).