

## NUMBER 13-13-00006-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

ROLANDO BENAVIDEZ,                                                    Appellant,

v.

THE UNIVERSITY OF TEXAS –
PAN AMERICAN,                                                          Appellee.

### On appeal from the 92nd District Court
### of Hidalgo County, Texas.

### MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Chief Justice Valdez

By three issues, which we construe as four, appellant Rolando Benavidez, challenges the trial court's order granting appellee The University of Texas-Pan American's (UTPA) plea to the jurisdiction. Benavidez argues that: (1) the release form he signed did not preclude his lawsuit because UTPA did not abide by the safety policies

listed on the back of the form; (2) the Texas Recreational Use Statute did not preclude the lawsuit because Benavidez's pleadings at least raised a fact issue regarding gross negligence; (3) the trial court erred by granting UTPA's objections to his evidence; and (4) the trial court erred by ordering Benavidez to pay UTPA's court costs.  We affirm.

## I.  BACKGROUND

This suit arises out of injuries sustained by Benavidez after falling from a climbing wall on the campus of UTPA.  Prior to climbing the wall, the belayer, an employee of UTPA, tied a rope to a harness attached to Benavidez.  While Benavidez climbed the wall, the belayer held on to the opposite end of the rope.  After reaching the top of the wall, the belayer instructed Benavidez to "let go."  Subsequently, Benavidez fell thirty-three feet from the top of the wall, breaking his ankle in multiple places and suffering a lumbar spine compression fracture.  Another employee of UTPA witnessed Benavidez fall and immediately came to his aid.  She provided deposition testimony in which she explained that the figure eight-knot which is used to tie the rope to the harness was "either not tied properly, or not tied at all."

Before he climbed the wall, Benavidez signed a waiver/release from liability.  On the front of the page, the form stated:

> By signing this agreement you give up your right to bring a court action to recover compensation or obtain any other remedy for any injury to yourself or your property or for your death however caused arising out of your use of the University of Texas Pan-American Climbing Wall now or any time in the future.

Also on the front of the page, under the heading, "Release/Indemnification and Covenant Not to Sue", the form stated:

> In consideration of my use of the Climbing Wall, I the undersigned user, . . . HEREBY DO RELEASE University of Texas Pan American . . . from any cause of action, claims, or demands of any nature whatsoever, including but not limited to a claim of negligence . . . against the University on account

2

for personal injury, property damage, death or accident of any kind arising out of or in any way related to my use of the Climbing Wall, whether that use is SUPERVISED OR UNSUPERVISED, howsoever the injury or damages is caused, including, but not limited to the negligence of the University.

Benavidez initialed under this clause in the blank provided. Benavidez then initialed in the spaces provided under paragraphs stating that he: (1) would indemnify and hold harmless UTPA from all causes of action; (2) had full knowledge of the risks associated with climbing the wall; (3) was in good health and had no physical limitations precluding his safe use of the climbing wall; and (4) was of lawful age and was competent to enter into a legally binding agreement. Appellee signed and dated the bottom of the front page of the document in the space provided.

On the backside of the Waiver and Release from Liability, under the title "SAFETY POLICIES AND RULES", it stated, inter alia:

I Rolando Benavidez [name written by Benavidez in space provided] accept full responsibility for my own safety while in the UTPA climbing Wall area. I agree to abide by, and help enforce the following safety policies and rules:

- To enter the climbing area, you must have signed a waiver of liability/assumption of the risk and turn into the climbing wall Supervisor.

- Climbers must check in/out at the Climbing Wall desk during operation hours.

- Before each climbing the entrance instructor and belayer must check each climber to ensure that the knot and harness buckle are correctly fastened and that the belay system and belayers harness buckles are safe.

- The belayer must keep their brake hand on the rope and eyes on the climber at all times.

- Belayers must belay while standing up: NO belaying from benches, seated, or in a reclined position.

3

. . . .

- No food or open drink containers allowed in the climbing wall area.

- No loose chalk.

- No obscene language.

. . . .

- No Jewelry

. . . .

- Any infraction of these rules will result in loss of climbing privileges. Repeated infractions will result in loss of future privileges for inappropriate or unsafe behavior.

These rules were included in a list of twenty-four safety policies and rules, all listed as bullet points. At the bottom of the document in bold letters, the document stated, "**I acknowledge that I have read and agree to abide by the Wellness and recreational Sports Complex safety polices and Rules.**" Underneath this statement, Benavidez printed and signed his name.

At the hearing on the plea to the jurisdiction, deposition testimony was admitted in which the belayer explained that although he believed at the time that he tied the knot securing the rope to the harness properly, he must not have appropriately tied a double figure-eight knot as he was instructed to do. The belayer also testified that an entrance examiner did not check the knot before Benavidez began his climb and that UTPA never followed that policy until after Benavidez's accident occurred.

Benavidez filed suit under section 101.021 of the Texas Tort Claims Act. In his pleadings, Benavidez alleged that his injuries resulted from the belayer's "failure to properly use the climbing equipment and properly supervise [Benavidez] during the climb." Under the theory of respondeat superior, Benavidez claimed that his injuries were

4

caused by the negligence and gross negligence of UTPA. Benavidez alleged a cause of action for negligent use of tangible personal property in that UTPA breached its "legal duty to [Benavidez] to provide supervision of [Benavidez], use safe equipment with [Benavidez], and to properly secure [Benavidez's] harness prior to climbing." Benavidez also alleged a cause of action for negligent use or condition of real property in that UTPA breached its duty to provide a safe climbing wall for Benavidez and failed to use ordinary care to protect Benavidez from an unreasonably dangerous condition. In addition, Benavidez alleged that UTPA had subjective awareness of a high degree of risk and acted with "conscious indifference to the rights, safety, or welfare of [Benavidez] or others similarly situated."

UTPA filed a plea to the jurisdiction alleging that it did not waive immunity under the Texas Tort Claims Act because (1) Benavidez signed a waiver of liability prior to climbing the wall releasing UTPA from liability "for all damages complained of" by Benavidez, and (2) pursuant to the Texas Recreational Use Statute, which further limits a State entity's waiver of immunity to circumstances in which the State entity fails to exercise a duty of care owed by a landowner to trespasser, Benavidez was required to demonstrate gross negligence in his pleadings and failed to do so. Benavidez responded by conceding that the Texas Recreational Use Statute applied to his claim and required him to prove gross negligence. Benavidez however contended that, (1) by his pleadings, he raised a fact issue on gross negligence; and (2) he could avoid enforcement of the release from liability as to all of his claims because UTPA committed a prior material breach or failed to satisfy a precondition of the contract by failing to comply with the safety polices.

5

After holding a hearing, the trial court entered an order granting UTPA's plea to the jurisdiction and ordered Benavidez to pay UTPA's court costs. This appeal followed.

## II.    STANDARD OF REVIEW

We review a plea to the jurisdiction under a de novo standard of review. *Westbrook v. Penley*, 231 S.W. 3d 389, 394 (Tex. 2007). A plea to the jurisdiction seeks to dismiss a case for want of jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004). When reviewing whether a plea was properly granted, we first look to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiff and looking to the pleader's intent. *Id.* at 226. "If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised," even where those facts may implicate the merits of the cause of action. *Id.* at 227. If that evidence creates a fact issue as to the jurisdictional issue, then it is for the fact-finder to decide. *Id.* at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. In considering this evidence, we "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *City of Waco v. Kirwan*, 298 S.W.3d 618, 621–22 (Tex. 2009).

## III.    TEXAS TORTS CLAIM ACT

As a governmental unit, UTPA is immune from both suit and liability unless the Tort Claims Act has waived that immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(A) (West, Westlaw through 2013 3d C.S.). Section 101.021 of the Tort Claims Act has been interpreted as waiving sovereign immunity in three general areas: "use of

6

publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property." *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 611 (Tex. 2000). Pursuant to section 101.021, a governmental unit in the state is liable for:

    (1)    property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

        (A)    the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

        (B)    the employee would be personally liable to the claimant according to Texas law; and

    (2)    personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West, Westlaw through 2013 3d C.S.).

In addition, the parties do not dispute that the Texas Recreational Use Statute applies to this case. When injury or death results on state-owned, recreational land, the recreational use statute limits the state's duty even further to that owed by a landowner to a trespasser, which means that the State only waives immunity for conduct that rises to the level of gross negligence. *Id.* § 75.002 (West, Westlaw through 2013 3d C.S.); *see also id.* §§ 75.003(g) ("To the extent that this chapter limits the liability of a governmental unit under circumstances in which the governmental unit would be liable under [the Tort Claims Act], this chapter controls."), 101.058 (same); *State v. Shumake*, 199 S.W.3d 279, 283 (Tex. 2006).

### IV. RELEASE/WAIVER OF LIABILITY

#### a. Applicable Law

A release operates to extinguish a claim or cause of action and is an absolute bar to the released matter. *See Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d

505, 509 (Tex. 1993). The Texas Supreme Court has held that in order to be valid, a release must (1) provide fair notice by being conspicuous, and (2) comply with the express negligence doctrine. *Id.* To be conspicuous, a release must be written, displayed, or presented such that a reasonable person against whom it is to operate ought to have noticed it. *See id.* 510 (adopting the definition from TEX. BUS. & COM. CODE ANN. § 1.201(b)(1) (West, Westlaw through 2013 3d C.S.)). A release satisfies the express negligence doctrine if it expresses the intent of the parties to exculpate a party for its own negligence. *Atl. Richfield Co. v. Petroleum Pers., Inc.*, 768 S.W.2d 724, 726 (Tex. 1989).

The party seeking the protections of a release asserts an affirmative defense. *Dresser*, 853 S.W.2d at 509. It is therefore the defendant's burden to establish all elements of the affirmative defense. *Id.* UTPA argues that it did not waive immunity under the Texas Tort Claims Act because it would not be liable as a private party as it established an affirmative defense as a matter of law. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. Accordingly, we apply a traditional summary judgment evidentiary burden to the UTPA's contention as we would to a private party's reliance on a release from liability prior to trial. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Galveston Indep. Sch. Dist. v. Clear Lake Rehab. Hosp., L.L.C.,* 324 S.W.3d 802, 807 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (reasoning that a governmental entity's challenge to jurisdictional facts implicating the merits of the plaintiff's lawsuit "mirrors traditional summary-judgment practice"). The burden was therefore on UTPA to provide evidence establishing that Benavidez had released it from liability on the claims before the court. *Clear Lake Rehab. Hosp., L.L.C.*, 324 S.W.3d at 811.

8

### b. Discussion

In its plea to the jurisdiction, UTPA argued that it did not waive immunity from Benavidez's Texas Tort Claims Act suit because Benavidez executed the release contract, which "released [UTPA] of all liability for the damage complained of in [Benavidez's] cause of action."[1]  Specifically, UTPA asserted that because the release was executed, Benavidez's "suit is barred in its entirety and [UTPA] moves for dismissal as a matter of law."  Moreover, both in its plea to the jurisdiction and on appeal UTPA described the release from liability as the "real issue before the court," and UTPA framed its Texas Recreational Use Statute defense as an alternative argument, asking the trial court to address the issue if it found that the release was not enforceable.  In his appellate brief, Benavidez concedes that UTPA's plea to the jurisdiction was based on two alternative defenses:  "(1) [Benavidez] waived all personal injury claims in a waiver/release from liability form . . . ; and (2) [Benavidez's] claims are barred by the recreational use statute."

---

[1] This Court has never held that a state entity's affirmative defense is a proper basis for granting a plea to the jurisdiction.  In its plea to the jurisdiction, UTPA relied on *Texas Engineering Extension Service v. Gifford*, in which the Waco Court of appeals reversed a denial of a plea to the jurisdiction because it found that the plaintiff had executed a release from liability.  No. 10-11-00242-CV, 2012 WL 851742, at *4 (Tex. App.—Waco Mar. 14, 2012, no pet.) (mem. op.).  The *Gifford* court reasoned that under the Texas Tort Claims Act:

> A governmental unit is liable for personal injury if the government would be liable, were it a private person, according to Texas law.  [The plaintiff's] execution of the release and indemnity agreement extinguished any liability owed by [the defendant]. Because a private person would not be liable for [the plaintiff's] personal injuries, [the defendant] has not waived its sovereign immunity.

*Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West, Westlaw through 2013 3d C.S.)).  In this appeal, we need not determine whether we agree with this analysis.  Benavidez does not argue that UTPA's affirmative defense of release is an improper basis for an order granting a plea to the jurisdiction; therefore, we cannot reverse the trial court's judgment on this basis and we decline to consider this issue.  TEX. R. APP. P. 47.1.  Accordingly, for purposes of this appeal only, we assume without deciding that the affirmative defense of release, if established as a matter of law, may be a valid basis upon which to grant a plea to the jurisdiction.

9

Notably, while Benavidez did not specifically plead separable causes of action for negligence and gross negligence, he did claim that the injuries alleged were caused by the negligence and gross negligence of UTPA and that UTPA exhibited "conscious indifference to the rights, safety, or welfare of [Benavidez] or others similarly situated." Moreover, in his motion for summary judgment, response to the plea to the jurisdiction, and appellate brief and at the hearing on the plea and at oral arguments on appeal, Benavidez conceded that the Texas Recreational Use Statue applied to his lawsuit, which required him to show gross negligence. He thereby effectively abandoned any separate claim of ordinary negligence, to the extent that it was originally pleaded, and proceeded only with a suit for gross negligence.

By granting the plea to the jurisdiction, which alleged that Benavidez released all claims against UTPA, the trial court therefore held that Benavidez released UTPA from liability for gross negligence. There is some disagreement among the courts of appeals as to whether a party may validly release claims of gross negligence. Some courts have held that negligence and gross negligence are not separable claims and that therefore a release of liability for negligence also releases a party from liability for gross negligence. *Tesoro Petroleum Corp. v. Nabors Drilling U.S.*, 106 S.W.3d 118, 127 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 722 (Tex. App.—San Antonio 1994, writ denied). In contrast, the Dallas Court of Appeals recently held that a plaintiff's execution of a contract specifically releasing a defendant from liability for negligence did not release the defendant from liability for gross negligence. *Van Voris v. Team Chop Shop, LLC*, 402 S.W.3d 915, 926 (Tex. App.—Dallas 2013, no pet.). The Dallas Court reasoned that the public policy requiring an express release from negligence also requires an express release from gross negligence.

10

*See id.* Other courts have held that pre-accident waivers of gross negligence are invalid as against public policy. *Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 336 (Tex. App. —Houston [14th Dist.] 2006, no pet.); *Smith v. Golden Triangle Raceway*, 708 S.W.2d 574, 576 (Tex. App.—Beaumont 1986, no writ).

This Court has never addressed the issue of whether a release from liability for gross negligence is separable from a release of liability from negligence, or whether a release of liability for gross negligence violates public policy. *See Blankenship v. Spectra Energy Corp.*, 13-12-00546-CV, 2013 WL 4334306, at *5 n.6 (Tex. App.—Corpus Christi Aug. 15, 2013, no pet.) (declining to decide whether a party may release claims of gross negligence because the release was unenforceable for failure to satisfy fair notice requirements and because summary judgment evidence conclusively negated the gross negligence claim). Here, we cannot decide this issue because it has not been raised. TEX. R. APP. P. 47.1. On appeal, Benavidez effectively concedes that the release form purports to release UTPA from liability for all personal injury claims, but relies solely on contract defenses as an attempt to avoid enforcement of the release. He does not challenge enforcement of the release on the ground that it was inapplicable to his gross negligence claims; similarly he does not argue that the release of his gross negligence claims was invalid because it did not comply with fair notice requirements or because it violated public policy. *See id.* Moreover, Benavidez did not present any of these arguments to the trial court. *See. id.* R. 33.1.

Accordingly, we now address Benavidez's first issue, in which he contends that he can avoid enforcement of the release contract because the belayer failed to properly tie the knot, and because UTPA failed to follow its own policy that required an entrance instructor to check the knot after it was tied. Benavidez argues that these actions

11

constituted either a prior material breach of the release contract or a failure to satisfy a precondition of the contract. We disagree.

Under Texas law, a release is a contract and is subject to avoidance just like any other contract. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). This court is bound to read all parts of a contract together to ascertain the agreement of the parties. *See Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 180 (Tex.1965). The contract must be considered as a whole. *Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). Moreover, each part of the contract should be given full effect. *See Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex.1987).

Under the theory of prior material breach, a party is discharged from its contractual obligations based on the other party's material breach of the contract. *See Mustang Pipeline Co. v. Driver Pipeline Co.,* 134 S.W.3d 195, 198 (Tex. 2004) (determining that a party was released from further contractual obligations when the other party materially breached). In order for a material breach of contract to occur, the party seeking avoidance must be deprived of part of its consideration or an expected benefit of the contract.[2] *See id.* at 199.

---

[2] Texas courts have adopted the factors set forth in the Restatement (Second) of Contracts for determining the materiality of a breach:

(1) the extent to which the injured party will be deprived of the benefit which he reasonably expected;

(2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

Alternatively, a condition precedent is an event that must occur or act that must be performed before rights can accrue to enforce an obligation. *See Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992). Ordinarily, terms such as "if," "provided that," "on condition that," or similar conditional language indicate the intent to create a condition precedent. *Criswell v. European Crossroads Shopping Ctr.*, 792 S.W.2d 945, 948 (Tex.1990). Conditions precedent, which can cause forfeiture of a contractual right, are not favored under the law, and we will not construe a contract provision as a condition precedent unless we are compelled to do so by language that may be construed in no other way. *See Reilly,* 727 S.W.2d at 530.

As an initial matter, we cannot conclude that under the plain language of the contract, the safety policies listed on the back of the waiver are part of Benavidez's agreement to release UTPA from liability on the front of the document; therefore, UTPA could not breach or fail to satisfy a condition of the release contract by failing to follow the safety policies. *See Mustang Pipeline Co.,* 134 S.W.3d at 198; *Criswell*, 792 S.W.2d at 948. Here, the separate sides of the document constitute separate agreements that were each signed separately by Benavidez; moreover, they contain separate promises to perform distinct duties. In the agreement on the front of the page, Benavidez agreed to release UTPA from liability for its own negligence resulting from any injury. In the

---

(3) the extent to which the party failing to perform or to offer performance will suffer forfeiture;

(4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and

(5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Mustang Pipeline Co., v. Driver Pipeline Co.,* 134 S.W.3d 195, 199 (Tex. 2004); RESTATEMENT (SECOND) OF CONTRACTS § 241(a) (1981).

13

agreement on the back of the page, Benavidez again agreed to accept full responsibility for any accident and agreed to comply with the safety policies listed on the form. In addition, the language of the document reveals that the safety policies referred to the release clause only by requiring the prospective climber to complete the release form before climbing the wall. This in no way indicates that the safety policies are part of the consideration or a condition of the waiver/release from liability.[3]

In fact, the language of the release clause explicitly states that the consideration for the release is the climber's opportunity to climb the wall. Further, the clause stipulates, in capital letters, that the release applies whether climbing is "SUPERVISED OR UNSUPERVISED," which indicates that UTPA was not promising to undertake any duty or conditioning the release on any action other than providing the climber with access to the climbing wall.

Moreover, even if we were to consider the two sides of the document as one agreement, the safety policies side of the document, by its clear language, does not indicate that UTPA promised to comply with the policies or that compliance with the policies by UTPA was consideration for or a condition precedent of Benavidez's agreement to release UTPA from liability. *See Forbau*, 876 S.W.2d at 133. Benavidez argues that the bullet point stating, "Before each climbing the entrance instructor and belayer must check each climber to ensure that the knot and harness buckle are correctly fastened" indicates that UTPA undertook an affirmative contractual duty to follow this

---

[3] Benavidez also refers us to deposition testimony from the coordinator of campus activities in which he agreed that both the back and front of the document are part of one agreement. This testimony however does not indicate that the safety policies were consideration for or a precondition of the release from liability. Moreover, the coordinator's testimony did not indicate that he was giving a legal opinion on whether both sides of the agreement constitute one contract.

policy as part of Benavidez's agreement to waive liability.[4]  However, reading the safety policies document as a whole, we find that the language of the agreement placed the sole responsibility on the climber to ensure that the procedures in the safety polices were followed.  *See Reilly,* 727 S.W.2d at 529.  At the top of the safety policy side of the document, it specifically states, "I <u>Rolando Benavidez</u> [name written by Benavidez in the space provided] accept full responsibility for my own safety while in the UTPA climbing Wall area.  I agree to abide by, and help enforce the following safety policies and rules." The safety policies are listed as bullet points beneath this agreement.  The language Benavidez refers to is listed among multiple bullet points mostly relating to Benavidez's conduct, such as "no jewelry" and "no obscene language."  As is clear from the plain language of the agreement, these are policies that Benavidez agreed to abide by and help enforce; no language indicates that UTPA agreed to comply with the policies or that the policies were consideration for or a condition precedent of the release from liability.

Further, the final bullet point of the safety policies stated that, "Any infraction of these rules will result in loss of climbing privileges.  Repeated infractions will result in loss of future privileges and possibly additionally sanctions . . . ."  The fact that the climber was subject to punishment for failure to follow the policies further indicates that the document was intended to require the climber to comply with and ensure compliance with the safety polices, and was not a promise to comply with the policies by UTPA.

Finally, at the bottom of the safety policies, directly before Benavidez's signature, it explicitly states:  "I acknowledge that I have read and agree to abide by the Wellness

---

[4] On appeal, Benavidez claims that the word "before", used as part of the safety polices, indicates that the bullet point was a condition precedent of the contract. *Criswell v. European Crossroads Shopping Ctr.*, 792 S.W.2d 945, 948 (Tex. 1990).  However, the term indicates that the safety policies were to be complied with before Benavidez climbed the wall not before he released UTPA from liability or before the contract could be enforceable. *See id.*

15

and recreational Sports Complex safety polices and Rules." Neither this language nor any other language on either side of the document indicates that Benavidez premised his acceptance of responsibility on or expected the benefit of the performance of any duty on the part of UTPA. *See Mustang Pipeline Co.,* 134 S.W.3d at 198; *Criswell*, 792 S.W.2d at 948.

Because we find that, by its clear language, the waiver and release form did not express the intent of either party to condition the release from liability on any performance by UTPA and did not include a promise by UTPA to follow the safety policies as consideration for the contract, we conclude that UTPA did not breach or fail to satisfy a condition of the release contract. *See Forbau*, 876 S.W.2d at 133. Therefore, Benavidez could not avoid enforcement of the release. *See Mustang Pipeline Co.,* 134 S.W.3d at 198; *Criswell*, 792 S.W.2d at 948. We overrule Benavidez's first issue.

## V.    REMAINING ISSUES

Because we are affirming the order granting the plea to the jurisdiction based on the trial court's finding that Benavidez released UTPA from liability on all of his claims, we need not address Benavidez's second issue in which he argues that the Texas Recreational Use Statute does not bar his suit because he pleaded facts sufficient to raise a fact issue on gross negligence. TEX. R. APP. P. 47.1. Moreover, we assume without deciding that all of the evidence presented by Benavidez was admissible; therefore, we need not address Benavidez's third issue in which he argues that the trial court erred by sustaining UTPA's objections to his evidence. *Id.*

Finally, Benavidez argues that the trial court erred by awarding UTPA court costs. Under Texas Rule of Civil Procedure 131, the "successful party to a suit shall recover court costs incurred therein, except where otherwise provided." TEX. R. CIV. P. 131. A

16

successful party, under the rule, has been defined as "one that obtains a judgment vindicating a civil right." *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 612 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). Benavidez argues that the trial court could not award court costs because to this date, no judgment has been issued by the trial court. However, Benavidez cites no law, and we find none, indicating that the trial court may not award court costs pursuant to Texas Rule of Civil Procedure 131 in an order granting a plea to the jurisdiction. *See* TEX. R. CIV. P. 131. Accordingly, we overrule Benavidez's fourth issue.

## VI. CONCLUSION

We affirm the trial court's order granting UTPA's plea to the jurisdiction

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
30th day of October, 2014.